HITCHCOCK *vs.* COVILL.

Where goods are obtained by a purchaser by making false representations as to his pecuniary condition and ability to pay, and by suppressing the truth in those respects, the vendor may rescind the sale, and after demand and refusal bring an action of trover against a sheriff who has levied upon the goods by virtue of an execution against the purchaser.

*It seems,* that where goods are ordered by the purchaser to be sent to a particular place, and the course of business at such place is for the *warehouseman* to keep them until called for or ordered on by the owner, the *transitus* is ended, and consequently the *right of stoppage* is terminated.

It is no answer to the action that the claim was originally placed upon the right of *stoppage in transitu,* if subsequently and before the sale a *general demand* was made; and especially where the sheriff took an indemnity.

THIS was an action of *trover,* tried at the Chemung circuit, in June, 1837, before the Hon. ROBERT MONELL, one of the circuit judges.

The suit was brought for a quantity of merchandize sold by the plaintiff, a merchant in the city of New-York, to one *Hobart B. Graves,* which was forwarded from the city of New-York to *Havanna,* a village at the head of the Seneca Lake, in pursuance of the direction of Graves. On the arrival of the goods at *Havanna,* they were levied upon by a deputy of the defendant, who at the time was sheriff of the county of Tioga, by virtue of an execution issued on a judgment in favor of I. Trotter and J.

B. Douglass against Graves, by the name of *Hobart Graves, junior,* and against two other persons. This judgment had been assigned to one *S. H. Addington, under whose direction the levy was made.* On being informed of the seizure of the goods, the plaintiff caused a written notice to be given to the sheriff that the goods had been sold by him to Graves, that the price remained unpaid, and that he claimed the right of *stoppage in transitu,* in consequence of the insolvency of Graves. Subsequently, and previous to the sale by the sheriff, a new demand was made by the plaintiff without specifying any grounds of claim ; to which the sheriff answered that *if he was indemnified* to his satisfaction he would sell, and on receiving such indemnity he proceeded and sold. On the trial of the cause the plaintiff proved that in October, 1831, Graves, who then resided at *Willardsburgh,* in the county of *Tioga,* in the state of *Pennsylvania,* came to New-York to purchase goods, and made purchases of the plaintiff, and other merchants in the neighborhood of the plaintiff, to the amount of about $700. He then represented his name to be *Hobart B. Graves,* that he had purchased of a Mr. Willard, at Willardsburgh, a stock of goods amounting to $2,500, had paid on account of that purchase $1,200, leaving a balance of $1,300, due, *which was all he owed in the world;* and that he wanted a small stock of goods to replenish his store. In April, 1832, he came again to New-York, and represented that he had made a further payment of $400 to Mr. Willard, leaving a balance due him of $900, *which was all he owed,* except for his fall purchases, the whole of which he intended to pay except $150. Upon these representations the plaintiff sold him a further quantity of goods amounting to $394.30, on a credit of six months, and four other houses acting upon the same representations, sold him goods to the amount of $2,000. Graves paid and made arrangements to pay his purchases of the preceding fall, to within $150, as he had promised to do. He directed the goods purchased of the plaintiff to be shipped on board a lake or canal boat bound to the village of Havanna, and they were accordingly boxed, directed to him at *Willardsburg, Tioga Co., Penn.,* and put on board a canal boat on the 12*th May.* The goods

Hitchcock *v.* Covill.

arrived at Havanna on the 24*th May*, and were deposited in a *warehouse* of a Mr. Waterhouse, where they were immediately levied upon by the defendant's deputy. *Havanna* was at that time at the head of navigation, and the course of business was to deposit there goods brought by canal and lake boats, there being no forwarding line beyond that point, and the warehouse-man kept them until called for or ordered on by the owners. The distance from *Havanna* to *Willardsburgh* is between 30 and 40 miles. On 28*th May*, Graves came to Havanna for his goods, having with him a team and driver, but finding them levied upon, did not take them. The judgment and execution were given in evidence; the execution directed a levy of the sum of $1,468.91, with interest from 1st December, 1824, besides costs of suit, &c. The proceeds of the sale amounted to upwards of $1,600, which sum was paid to and *receipted by Addington.* Graves formerly resided in the neighborhood of Addington, in Oneida county, in this state, and was there known by the name of *Hobart Graves, junior;* at Willardsburgh he was known by the name of *Hobart B. Graves.* His insolvency was proved.

The counsel for the defendant objected to the evidecne of *fraud* on the part of Graves in obtaining the goods, insisting that the plaintiff having in the notice to the sheriff placed his claim upon the right of *stoppage in transitu*, was precluded from assuming any other groundof recovery; but the objection was overruled. He also insisted that the goods having arrived at *Havanna*, the delivery was complete, and that the right of *stoppage in transitu* was ended; and further, that there was not such evidence of fraud as would vitiate the sale. The judge charged the jury, that he inclined to the opinion that the right of *stoppage in transitu* was not terminated by the delivery of the goods at *Havanna*, that not being the place of their ultimate destination, but did not think it necessary to place the decision of the case upon that ground. Thatthe plaintiff had a right to insist upon thef raud in the misrepresentations alleged to have been made by Graves; and if they should find that he had made false representations as

to his true name, and as to his pecuniary circumstances, and thereby had induced the plaintiff to part with his goods, the plaintiff upon that ground alone would be entitled to reclaim his goods, although Graves might have intended at the time, ultimately to have paid for the goods, and did not purchase them with a view of exposing them to the execution under which they were taken. The jury found a verdict for the plaintiff for $530.76 damages. The defendant asked for a new trial.

*S. Stevens*, for the defendant.

*J. A. Collier*, for the plaintiff.

*By the Court*, NELSON, Ch. J.   I am inclined to the opinion that the *transitus* was at an end.   The course of trade as well as the instructions given, pointed out *Havanna* as the place where the goods were to be deposited, and wait for the special charge and directions of the vendee ; there was no forwarding line beyond it, and the usage was universal by the warehouse-man thus to detain them ; after this, the vendee necessarily took special charge of any further conveyance, and it may be said that the goods were carried from thence by his own teams.   But even if any doubt should exist as to the soundness of this view, and I admit that the cases are scarcely reconcilable upon the point, *Hunter* v. *Beale*, 3 *T. R.* 466; *Stokes* v. *La Riviere*, 3 *East*, 397; 2 *Bos & Pull.* 461; 7 *T. R.* 440; 5 *East*, 175; 2 *Selw.* 982; *Ross on Vend.* 221, 243; 15 *Wendell*, 137; 17 *id.* 504; when we take in connection with the other circumstances the additional fact that Graves called with his teams and would have taken the goods into his actual possession, had it not been for the levy, it seems to me there can be no longer any doubt.   4 *Esp.* 82. 2 *Bos & Pull.* 461. 3 *T. R.* 464. *Ross*, 239.   But admitting that the above conclusion may be erroneous, the plaintiff, I think, is still entitled to retain the verdict upon the other ground taken at the trial.   The jury have found under proper instructions, that the goods were purchased upon a credit by means of the false representations of Graves in respect to his pecuniary condi-

Hitchcock *v*. Covill.

tion and ability to pay, and that after special inquiries of him upon the subject. It is obvious from the facts in the case, that instead of being in the prosperous condition represented, he suppressed the truth, and was hopelessly bankrupt. The change of his name at the time he removed to *Pennsylvania*, also cast suspicion over his character, and went to shew that his fraud was premeditated.

But it is urged that the written notice and demand first made, that the goods were claimed upon the special ground of *stoppage in transitu*, precluded the plaintiff from setting up any other, as on the trial it would operate as a surprise upon the officer. It is, I think, a sufficient answer to say, that a general demand was subsequently made before sale, which was enough to put the defendant upon inquiry as to the nature of the plaintiff's claim, and leaves the plaintiff unembarrassed as to the ground upon which he chooses to rest. I know it was said in reply that the officer might have inferred that the claim was still on the first ground, no other being specified; but this inference necessarily requires us to assume the second demand to have been an idle ceremony, which we cannot do, as it would be a very forced conclusion. Besides, as regards the officer, it is apparent that he could not have been mislead or surprised by the plaintiff enlarging the ground of the claim, as he has taken the precaution to be indemnified, and put his refusal on that footing. And in respect to the party in interest, I do not perceive any good reason for conceding to him the benefit of the objection, as he stands in no better situation than *Graves*, who clearly could not have availed himself of it. He would not be permitted upon this pretence to shut out his own fraud under the circumstances of the case. The instructions in pursuance of which the first claim was made were dictated by counsel in the city, before the true history of the case was was known, and the second was made by advice of other counsel after Wood (the clerk,) had visited *Willardsburgh*, and learned the particulars.

New trial denied.