## THOMPSON and another *against* ROSE.

*Hartford,*
June, 1844.

Thompson
*v.*
Rose.

| 16 | 71 |
| 61 | 168 |
| 16 | 71 |
| 77 | 373 |

Where *A*, wishing to purchase goods on a credit from *B*, and having made an unsuccessful application to *B* for that purpose, went again to *B*'s store, and complained to *C*, a clerk employed by *B*, in his business, that he, *A*, was not trusted before; and represented that he was doing a good and safe business, and that his note was sure to be paid; after which, *A* seeing *B* in an adjoining room, the door being open, passed to him, and addressing to him similar representations, succeeded in obtaining the goods from him, before he had had any communication with *C;* these representations being false and fraudulent, *B* brought trover for the goods sold; on the trial of which it was held, that the representations made by *A* to *C*, and not communicated to *B* before the sale, were admissible to show the character of the transaction.

It is now a settled rule of law, that if a person purchases goods with a pre-conceived design not to pay for them, the vendor has a right to treat the sale as void.

If there be any exception to this rule, it is either where there has been some fault in the vendor, other than that he has been deceived by the fraud of his vendee; or where the goods are holden by a *bona fide* purchaser; or where they have been seized by a creditor of the vendee, for a debt which accrued after the fraudulent purchase, and upon the credit of such goods.

An attaching creditor, who has not parted with his property upon the credit of the goods fraudulently purchased, does not stand upon the same ground as a *bona fide* purchaser.

The seizure of goods fraudulently purchased, on regular process in favour of a creditor of the vendee, is not a tortious act; and a demand by the vendor, accompanied by a statement of his title, is necessary to entitle him to sustain trover against the officer.

But if upon such demand being made, there is an unqualified refusal, by the officer, to deliver the goods, without requiring any evidence of the vendor's title, or expressing any doubts concerning it, the jury may presume a waiver of any information on that subject.

A refusal to deliver goods, upon a demand duly made, is *prima facie* evidence of a conversion.

If an officer, attaching goods subject to the lien of a common carrier for freight, pay that freight, that he may get the goods into his possession, he, in respect to the lien, stands in the place, and has the rights, of such common carrier.

But if an officer entitled to such lien, on demand of the goods, make an unqualified refusal, without any claim of lien, he cannot afterwards set up such lien as a defence to an action of trover for the goods.

This was an action of trover for a quantity of tobacco.

The cause was tried at *Hartford, September* term, 1843, before *Waite, J.*

On the 10th of *February,* 1842, and previously, the plaintiffs were merchants, transacting business as partners in the city of *New-York,* under the firm of *Thompson & Adams;* and, at the same time, *Andrew Denison* and *Joseph W. Denison* were doing business in *Suffield,* in this state, where they

both resided. as partners, under the firm of *A. & J. W. Denison*. The plaintiffs claimed to have proved, that on the 5th of *February*, 1842, *J. W. Denison* went to their store, in the city of *New-York*, and requested one *Bush*, a clerk of theirs, to show him some tobacco, which he did; that while he was doing so, said *Joseph* stated to him, that *A. & J. W. Denison* were doing a large business in tobacco,—had frequently made purchases of it from various dealers in the article in *New-York*,—and represented in substance, that their business was large, extensive and flourishing : that after examining the tobacco, said *Joseph* made an offer for 25 bales of it to *Thompson*, one of the plaintiffs, which was accepted, subject to the condition that the standing of the house of *A. & J. W. Denison* should be satisfactory to said *Thompson*, who had never before had any transactions with them. For information on this subject, said *Joseph* referred said *Thompson* to *Peter D. Collins*, of *New-York*. In pursuance of this reference, *A. F. Elliott*, another clerk of the plaintiffs, afterwards called upon said *Collins*, and made enquiries as to the credit and standing of said *Denisons;* and said *Collins*, in reply, said, that he was in the habit of dealing with them, and giving them a credit, but not to an amount so large as that proposed to be given them by the plaintiffs, and represented that it would not be safe for the plaintiffs to give them credit for an amount so large. When this was communicated to the plaintiffs, they refused to sell said *Denisons* said tobacco. When said *Joseph* afterwards called at the plaintiffs', their decision was communicated to him, and he left the store and returned to *Suffield*.

On the following week, he again went to *New-York*, and on the 10th of *February*, went to the plaintiffs' store, and finding said *Elliott* there, a clerk of the plaintiffs and employed in their business, said to him, that he thought it very singular, that the plaintiffs had refused to sell him the tobacco; that they, said *Denisons*, could purchase goods from other houses in the city, without difficulty; that they were doing a good and safe business; and that their note was sure to be paid : that said *Joseph* seeing said *Thompson* in an adjoining room, the door between the two rooms being open, went into the room where said *Thompson* was, and had a conversation with him, the first part of which said *Elliott* did not hear, but

*Hartford.*
June, 1844.
_____

Thompson
*v.*
Rose.

he did hear him state to said *Thompson*, that they, said *Denisons*, were doing a good business, and that their note was sure to be paid. Thereupon said *Thompson* sold to said *Denisons* said 25 bales of tobacco, for 351 dollars, 90 cents, and took their note therefor, payable in 4 months.

*Elliott* testified, that the representations so made to him, were not, by him, communicated to sa d *Thompson*, until after the sale, and after said *Denison* had left the store.

Upon that ground, the defendant objected to the admission of evidence of the representations so made to him, by said *Joseph* ; but the court admitted it.

The plaintiffs further introduced evidence to prove, and claimed, that on the said 10th of *February*, 1842, immediately after the sale, in pursuance of directions given by said *Joseph*, and in his absence, they caused said 25 bales of tobacco to be shipped on board the steam-boat *Splendid*, bound from *New-York* to *New-Haven*, and that they were carried by said boat to *New-Haven*, thence by the rail-road to *Hartford*, and thence, by a common carrier, to said *Denisons'* shop in *Suffield*, where they were attached by the defendant, by virtue of a writ in favour of *William Agnew & Son*.

They were forwarded to *Suffield*, in the usual mode of conveyance ; were addressed to no particular person, nor to any particular place ; having no marks upon them, except such as were upon them when they were imported from *Cuba*.

The plaintiffs further introduced evidence to prove, and claimed, that from that, and the evidence produced by the defendant, it was proved, that at the time of said *Joseph's* application for the purchase of the twenty-five bales of tobacco, long before, and at all times thereafter, said *Denisons*, and each of them, were deeply and utterly insolvent, and their pecuniary credit bad ; that they owed more than 10,000 dollars, and had not assets of the value of 3,000 ; and that the principal part of their indebtedness was then actually due and payable ; that a short time previous to said application, their principal debtor, one *Hutchinson*, a resident in *Boston*, owing them about 2,000 dollars, had failed and absconded ; that a draft which they had drawn upon him for 800 dollars, payable in eighteen days, and holden by one *Josiah Knowles*, of *Massachusetts*,would become due in four or five days after

the purchase, and that no provision whatever had been made for the payment thereof, either by said *Hutchinson* or said *Denisons;* that said *Joseph,* at the time of the purchase, was a minor under the age of twenty-one years; and that, at the several times when said representations were made to said *Bush, Elliott* and *Thompson,* and the purchase made, all the facts aforesaid were well known to said *Joseph,* and were by him intentionally concealed from the plaintiffs, who were entirely ignorant of them ; and that said *Denisons* had not the ability to pay for said tobacco, nor had they any expectation or intention of so doing.

The plaintiffs further claimed to have proved, that on the 10th of *February,* 1842, sundry creditors of said *Denisons* attached all their property, so far as it could be found, by the most diligent search, and appropriated it in payment of their debts, leaving the largest part of them unpaid.

The plaintiffs also claimed to have proved, that after said attachment, and while the tobacco was holden under it by the defendant, *viz.,* on the 20th of *February,* 1842, they, by their agent, duly authorized, demanded of the defendant said 25 bales of tobacco; and that the defendant refused to deliver it, or permit said agent to see it ; that afterwards, on the 22nd of *February,* 1842, the plaintiffs again, by their attorney, duly authorized, demanded said tobacco of the defendant, which he again refused to deliver ; that said attorney stated to him, that he was acting in behalf of the plaintiffs, and mentioned the number of bales and the marks upon them, and enquired of the defendant where the tobacco was, and requested permission to see it, but the defendant refused to inform him where the tobacco was, or to show it to him.

Neither said agent nor said attorney stated to the defendant the plaintiffs' title to the tobacco ; nor did the defendant, at either time, when it was demanded, make any enquiries respecting the title, or ask for any evidence relating thereto, or express any doubts concerning it ; nor did he give the plaintiffs, or either of them, any notice that he held the tobacco by virtue of any lien growing out of the freight and transportation thereof. And there was no evidence that the plaintiffs, or their agent or attorney, before the trial, had any knowledge or intimation, that the defendant had, or claimed, any other lien thereon, except by virtue of said attachment,

or any knowledge of the manner in which said tobacco had been transported from *New-Haven* to *Suffield.*

*Hartford,*
June, 1844.

Thompson
*v.*
Rose.

The defendant denied the claims of the plaintiffs in regard to the representations of *J. W. Denison,* and the insolvency of the said *Denisons,* and claimed that he had proved the contrary, and particularly, that said *Denisons* began business two or three years previous to said purchase, with but little capital; that their business soon became extensive and prosperous, and so continued until the time of the purchase, and was principally done upon credit; that their credit was good down to the 10th of *February,* 1842, when their creditors, unexpectedly, and without their knowledge or suspicion, attached their property and broke them up; that at the time of the purchase, said *Denisons* were doing a good business; made the purchase in good faith, and with the intention of paying for said tobacco, when the payment should become due; that the representations made by *J. W. Denison,* before and at the time of the purchase, were true; that the representations made to *Bush* and *Elliott,* were not communicated to the plaintiffs, or either of them, and did not in any manner induce such sale; and if communicated, were true and honestly made. But it was not claimed by the defendant, that *J. W. Denison* was not a minor, at the time of the purchase, or that he ever informed the plaintiffs that he was a minor.

The defendant also claimed to have proved, that he was a deputy of the sheriff of the county of *Hartford,* and had in his hands, duly directed, a lawful writ of attachment in favour of *William Agnew & Son,* of the city of *New-York,* and when said 25 bales of tobacco were brought up, by the common carrier, to the shop of said *Denisons,* in *Suffield,* he attached them; that there was due to said carrier, for the freight and transportation of said tobacco, the sum of 14 dollars, 37 cents, for which he had a lien upon said tobacco; and that he thereupon demanded of the defendant, the payment of said sum, which the defendant advanced, and paid to said carrier, when he attached and took possession of said tobacco, and which he was obliged to advance to obtain such possession; and that the defendant thereby acquired a lien upon said tobacco for the amount so by him paid: that said *William Agnew & Son,* on the 29th of *January,* 1842, sold to said *Denisons,* on a credit of four months, 30 bales of

bacco, for 667 dollars, and delivered it to them on a credit, and with a condition that they should be paid therefor, on request, by the notes of said *Denisons*, payable in four months, to said *Andrew Denison*, and by him indorsed; which notes said *Andrew* afterwards refused to indorse.

It further appeared from the evidence, that *W. Agnew & Son*, at the time of their sale to the *Denisons*, took notes for the price of said tobacco, executed by *J. W. Denison*, by whom the purchase was made, in behalf of said *Denisons,* and shortly afterwards forwarded them to *Henry P. Kent,* of *Suffield,* for the purpose of having him procure the indorsement of *Andrew Denison* thereon; and said *Andrew* having neglected and refused to indorse said notes, said *Kent,* without any previous instructions from *W. Agnew & Son,* and without their knowledge, caused a suit to be instituted against the *Denisons,* for a supposed breach of contract, in respect to the purchase of said tobacco, and caused said 25 bales of tobacco to be attached as aforesaid. A copy of the writ of attachment in that suit, with the defendant's return thereon, was given in evidence on the trial; but it was not claimed, by the plaintiffs, that *W. Agnew & Son* acquired any beneficial interest whatever in the property described in said return as having been previously attached. *W. Agnew & Son,* having been afterwards informed, by said *Kent,* of his doings, approved and ratified them, and proceeded with said suit, and recovered judgment therein, for the value of said 30 bales, and caused said 25 bales to be sold upon the execution issued upon said judgment.

The defendant claimed, 1. that if the sale by the plaintiffs to the *Denisons* might be avoided for fraud, yet *W. Agnew & Son* had a right to elect to reclaim said 30 bales of tobacco, or to recover the value of them; and that if they caused their writ of attachment to be levied upon said 25 bales of tobacco, without any knowledge, at the time, of any fraud in the purchase, they were in the condition of *bona fide* purchasers, and the defendant was justified in refusing to deliver said 25 bales to the plaintiffs, when demanded. 2. That the demands made upon the defendant were insufficient, because the title of the plaintiffs was not made known to the defendant, when such demands were made, or at any other time. 3. And that the plaintiffs had no right to recover, because

they had not paid or tendered to the defendant the amount which he paid for the freight and transportation of the tobacco, and for which the defendant had a lien thereon. And the defendant prayed the court so to instruct the jury; which was not done.

*Hartford,*
June, 1844.

Thompson
*v.*
Rose.

But upon these points, the court informed the jury, that if the tobacco in question was obtained from the plaintiffs, in the form of a purchase, by fraud—by the false and fraudulent representations of *Joseph W. Denison,* respecting the responsibility of the *Denisons,* and with the intention of getting possession of the tobacco, and never paying for it—the plaintiffs had a right to rescind the contract of sale, and recover possession of the goods.

That if the tobacco had been so obtained, the defendant, by his attachment, in the manner claimed by him and proved upon the trial, acquired no valid lien, as against the claim of the plaintiffs.

That although the defendant was entitled to reasonable information as to the plaintiffs' title, before he was bound to give up the property, yet it was his duty, when the property was demanded of him, to have called for such information, if he meant to insist upon it. And if, when the property was demanded of him, he gave an unqualified refusal to deliver it, without requiring any evidence of the plaintiffs' title, or expressing any doubt respecting it, the jury had a right to presume a waiver of his claim to such information.

That, as to the lien of the defendant upon the tobacco, for the moneys paid for the freight and transportation, it was his duty to have given notice thereof, when the property was demanded, that the plaintiffs might have had an opportunity of paying the same. And if the defendant never gave the plaintiffs, or his agent, or attorney, any such notice, and they had no knowledge of any such lien, and the defendant gave an unqualified refusal to deliver the property, when it was demanded of him, he could not be justified in retaining the property on account of such lien.

The jury returned a verdict for the plaintiffs; and the defendant thereupon moved for a new trial for a misdirection.

*Toucey* and *T. C. Perkins,* in support of the motion, contended, 1. That the representations made to *A. F. Elliott,*

one of the plaintiffs' clerks, not communicated to them who made the sale, until after it was effected, and not in any manner inducing it, were not admissible. *Allen* v. *Addington*, 7 *Wend.* 1. *Cross & al.* v. *Peters*, 1 *Greenl.* 376. 390.

2. That the rights of *W. Agnew & Son* were those of a *bona fide* purchaser. The conditional sale and delivery of their own property was made absolute, upon the faith of this. The debt was subsequent, and became a debt upon the faith of the property attached. *Parker* v. *Patrick*, 5 *Term R.* 176. *Mowrey* v, *Walsh*, 8 *Cowen*, 238. 243. *Lloyd* v. *Brewster*, 4 *Paige* 537. *Bean* v. *Smith*, 2 *Mason* 252. *Simes* v. *Brewer*, 2 *Pick.* 190. *Rowley* v. *Bigelow*, 12 *Pick.* 307. *McCarty* v. *Vickery*, 12 *Johns. R.* 348. *Hollingsworth* v. *Napier*, 3 *Caines*, 182. *Gilbert* v. *Hudson*, 4 *Greenl.* 347. *Lanfear* v. *Sumner*, 17 *Mass. R.* 110. 115. *Hussey* v. *Thornton*, 4 *Mass. R.* 405. 407. *Marshall* v. *Fisk*, 6 *Mass. R.* 24.

3. That it was the duty of the plaintiffs to give the defendant reasonable information of their title; and it was not the duty of the officer to call for it; nor was it waived. Consequently, the demand made upon the defendant was insufficient. [*Williams*, Ch. J. Is not this a question of fact?] It was presented as a matter of law; and the court passed upon it as such. The defendant did not know that the enquirer was, or claimed to be, the owner.

4. That the defendant had a right to hold the property for the freight which he had paid, and which constituted a lien upon it. There was no offer to pay this freight; but the transaction was simply a demand on one hand, and a refusal on the other.

*Hungerford* and *Cone*, contended, 1. That the testimony of *Elliott* was admissible. It gave character to the transaction. It showed the *quo animo* of the party. The clerk was lulled into security, by the false statement of *J. W. Denison.* If the truth had been told, the plaintiffs would never have had occasion to look after their tobacco. *Cary* v. *Hotailing*, 1 *Hill*, 311. *Olmsted* v. *Hotailing*, 1 *Hill*, 317. *Alison* v. *Mathieu*, 3 *Johns. R.* 235. 238. *Hawes* v. *Dingley*, 17 *Maine R.* 340.

2. That if under the colour of a purchase, *Denison* obtain-

*Hartford*,
June, 1844.

Thompson
*v.*
Rose.

ed the tobacco, by a fraudulent representation of his circumstances, or with a preconceived design of never paying for it, the plaintiffs had a right to treat the contract as a nullity, and to recover in trover for the goods. *Lupin* v. *Marie*, 2 *Paige*, 169. *Walker* v. *Devereaux*, 4 *Paige*, 229. *Mowrey* v. *Walsh*, 8 *Cowen*, 238. *Tamplin* v. *Addy*. *Id*. 239. *Root* v. *French*, 13 *Wend*. 570. *Hoffman* v. *Carow*, 22 *Wend*. 318. *per Verplanck*, Sen. *Ashe* v. *Putnam*, 1 *Hill*, 302. *Cary* v. *Hotailing*, 1 *Hill*, 311. *Olmsted* v. *Hotailing*, 1 *Hill*, 317. *Valentine* v. *Kelly*, *Law Reporter*, Feb. 1842. *Buffington* v. *Gerrish*. 15 *Mass. R*. 156. *McKenney* v *Dingley*, 4 *Greenl*. 172. *Seaver* v. *Dingley*, 4 *Greenl*. 306. *Gilbert* v. *Hudson*, 4 *Greenl*. 345. *Hawes* v. *Dingley*, 17 *Maine R*. 340. *Thurston* v. *Blanchard*, 22 *Pick*. 18. *Stevens* v. *Austin*, 1 *Metc*. 557. *Hitchcock* v. *Covill*, 20 *Wend*. 167.

3. That the defendant, by attaching the tobacco, acquired no valid lien thereon. *Parker* v. *Patrick*, 5 *Term Rep*. 175. *Noble* v *Adams*, 7 *Taun*. 59. *Earl of Bristol* v. *Wilsmore*, 1 *B. & Cr*. 514. (8 *E. C. L*. 146.) *Tamplin* v. *Addy*. 8 *Cowen*, 239. n. *Mowrey* v. *Walsh*, 8 *Cowen*, 238. *Root* v. *French*, 13 *Wend*. 570. *Peer* v. *Humphrey*, 4 *Ad. & El*. 495. (29 *E. C. L* 158.) *Saltus* v. *Everett*, 20 *Wend*. 268. *Ashe* v. *Putnam*, 1 *Hill*, 302.

4. That the demand of the tobacco was sufficient. 3 *Stark. Ev*. 1244. 2 *Selw. N. P*. 541. *Smith* v. *Young*, 1 *Campb*. 439. *Watt* v. *Potter*, 2 *Mason*, 77. *Allen* v. *Ogden*, 1 *Wash. C. C. R*. 176. *Lockwood* v. *Bull*, 1 *Cowen*, 322. *Hitchcock* v. *Covill*, 20 *Wend*. 171. *Mitchell* v. *Robertson*, 4 *Hill*, 13. *Ayer* v. *Ayer*, 16 *Pick*. 327. *Connah* v. *Hale*, 23 *Wend*. 470. *Head* v. *Lodge*, 20 *Pick*. 53. *Brigham* v. *Clark*, 20 *Pick*. 43. *Higgins* v. *Emmons*, 5 *Conn. R*. 76.

5. That if the defendant had any lien upon the tobacco, it was waived by him, and cannot now be insisted on. *Saltus* v. *Everett*, 20 *Wend*. 271. But the defendant—the officer— had no lien. *Allen* v. *Ogden*, 1 *Wash. C. C. R*. 176.

6. That no demand of the tobacco was necessary. *Galvin* v. *Bacon*, 2 *Fairf*. 28. *Whipple* v. *Gilpatrick*, 19 *Maine R*. 428. and many of the authorities cited on the 2d and 3d points.

**WILLIAMS**, Ch. J.   The first question presented upon this motion, is, whether proof of the representations made by *Denison* to *Elliott*, the clerk of the plaintiffs, and not communicated by him to them before the sale, was properly admitted in evidence ; and cases have been cited to show, that the plaintiffs must have acted under the fraudulent representations made, or they could not recover.   That principle is not denied ; but still it is claimed, that this evidence is admissible; and cases are cited to show, that fraudulent representations made to others are admissible, where there is a combination to deceive.   *Gardner* v. *Preston*, 2 *Day*, 202.   And similar fraudulent practices about the same time, have been admitted, where there was no combination, to prove the *quo animo.* *Cary* v. *Hotailing*, 1 *Hill*, 311.   *Hawes* v. *Dingley*, 17 *Maine R* 340.   How far those cases apply to this, we need not determine.

When we look at the facts in this case, we think that the evidence was admissible as part of the *res gestæ.*   *Denison* had before been disappointed in obtaining these goods, in consequence of the information which this clerk, the witness, had obtained.   Whether he knew this particular fact or not, does not appear ; but he knew that this man was a clerk of the plaintiffs ; and doubtless hoped, through his agency, to effect his object.   He then came to the plaintiffs' shop, to obtain the article.   He finds the witness; complains to him that his firm was not trusted before ; represents that they could get credit elsewhere ; that they were doing a safe business ; and that their note was sure to be paid.   If upon this *Elliott* had sold the goods, there could be no doubt that the plaintiffs could recover, if they proved the representations false and fraudulent ; for it would be the same thing as if made to the plaintiffs themselves. *Allen* v. *Addington*, 7 *Wend.* 22.   But after saying this to *Elliott*, he sees one of the plaintiffs in the adjoining room, the door being open, and goes up to him with similar representations.   This, then, was in fact a continued conversation, by *Denison*, with the agents of the plaintiffs and the plaintiffs themselves, carried on by him, to effect a single object—to get this tobacco upon credit.

The conversation with the clerk not being repeated to the principal, might not prove that the plaintiffs were deceived

by that communication ; but it would tend to show, that the communication made to them, if false, was fraudulent : it was calculated to influence the opinion and to procure the aid of this clerk, or at least to throw dust into his eyes, and prevent his interference. If, instead of these representations, or with these representations, *Denison* had told this clerk, that he would make him a present, if he would not say any thing, was he enquired of; this surely would have been admissible evidence, though in fact it had no effect upon the sale, as he was not enquired of; but it would have been proper evidence to show the arts made use of, to effect the object.

The evidence in the case before us, is not so strong ; but is, we think, of the same character, showing a set design to obtain these goods, by these false representations, made at the same time as those made to the plaintiffs, and to those persons, who otherwise would have been most likely to have undeceived him.

The next question is, if this sale was obtained by fraudulent representations, whether the plaintiffs can treat it as void ? We believe, that the rule is now settled, that if a person purchases goods with a preconceived design not to pay for them, the vendor has a right to treat the sale as void. *Reid* v. *Hutchinson*, 3 *Campb.* 352. *Noble* v. *Adams*, 7 *Taunt.* 89. *Earl Bristol* v. *Wilsmore*, 1 *B. & Cr.* 514. (8 *E. C. L.* 146.) *Kilby* v. *Wilson*, *Ry. & Moo.* 178. (21 *E. C. L.* 178.) *Hawse* v. *Crowe*, *Ry. & Moo.* 414. (21 *E. C. L.* 477 ) *Ferguson* v. *Carrington*, 9 *B. & Cr.* 59. (17 *E. C. L.* 330.)

This principle has been often recognized in the state of *New-York*, and more than once in our superior court.

But it is said, that if goods so obtained are sold to a *bona fide* purchaser, the plaintiffs would have no right to retake them ; and that the defendant stands in the light of a *bona fide* purchaser. In support of the first proposition, *Parker* v. *Patrick*, 5 *Term Rep.* 175. and *Mowrey* v. *Walsh*, 8 *Cow.* 238. are cited. The case of *Parker* v. *Patrick* seems to have been considered as law, and followed, by the courts in *Maine* and *New-Hampshire*. *Gilbert* v. *Hudson*, 4 *Greenl.* 345. *Bradley* v. *Obeare*, 10 *N. H.* 477.

The view we have taken of the case before us does not re-

*Hartford,*
*June, 1844.*

Thompson
*v.*
Rose.

quire us to examine those cases, in the same manner, as under other circumstances we might feel called upon to do. It is enough to say, that in *England,* the former case has been doubted, by high authority. *Peer* v. *Humphrey,* 2 *Ad. & El.* 495. (29 *E. C. L.* 495.) *Tamplin* v. *Addy,* 8 *Cow.* 239. note. So too the case of *Mowrey* v. *Walsh* is doubted in the state of *New-York. Cary* v. *Hotailing,* 1 *Hill,* 306. *Lloyd* v. *Brewster,* 4 *Paige,* 537. But however this might be, where an innocent person has been deceived, by the credit which the vendee may have acquired by goods so purchased, we cannot think, that the sheriff, (or those whose interests he represents,) who attaches the goods as the goods of such fraudulent vendee, stands in the relation of a *bona fide* purchaser. Some general expressions of this kind may have fallen from the court of *Massachusetts,* upon that subject. But we believe no case is to be found there or elsewhere, where there has been no fault on the part of the vendor of goods, except that he has been deceived, by the fraud of his vendee, that it has been holden, that the creditors of such vendee could seize the goods, when he himself could not hold them, except where the debt accrued after the purchase of the goods in question, and upon their credit. *Gilbert* v. *Hudson,* 4 *Greenl.* 345. *Bradley* v. *Obeare,* 10 *N. H.* 477. On the contrary, in the case of *Tamplin* v. *Addy,* above cited, which was a suit against the sheriff, Ch. J. *Best* says : " There is no principle of law better established, than that which declares, that no property passes by a fraud." In such case, "the right remained in the original owner, no matter in what hands they found their way." 8 *Cow.* 241. And a similar doctrine has been repeatedly holden, by the supreme court of the state of *New-York,* except so far as any exception may exist under the authority of *Mowrey* v. *Walsh,* 8 *Cow.* 238. *Hitchcock* v. *Covell,* 20 *Wend.* 167. And we are unable to see how, unless there be some unreasonable delay on the part of the vendor in reclaiming his property, the attaching creditors can obtain any thing by their attachment, except the right their debtor had. Had the property been stolen from the vendee, or were it in his hands as bailee or factor, there would be no question as to the right of the original owner. And it is not unfrequently the case, that a man whose property has been stolen, has been guilty of as great negligence re-

garding it, as the man who has been deluded by the arts of a swindler.

By the statement of facts in this case, it appears, that the *Agnews*, the creditors on whose suit these goods were attached, sold the goods on which their debt was founded, on the 29th day of *January*, 1842; and the plaintiffs sold the goods in dispute to *Denison*, on the 10th of *February*, following; and these goods were forwarded to *Suffield*, without any particular mark, by public conveyance; and were attached upon the day of their arrival, and after the *Denisons'* business had been broken up. The attaching creditor must, therefore, assume the broad ground, that in all cases, the rights of an attaching creditor must prevail against the rights of an owner who has been cheated out of his goods, by false representations. For here no false credit was held out, like the case supposed by Ch. J. *Parsons*, in *Hussey* v. *Thompson*, 4 *Mass. R.* 407.; or as existed in *Gilbert* v. *Hudson*, 4 *Greenl.* 347. The cases cited do not, therefore, support the position of the defendant. On the contrary, in a recent case in *New-Hampshire*, where the court adopted the principle in *Parker* v. *Patrick*, as it respects a *bona fide* purchaser, they expressly decided, that an attaching creditor, who had not parted with his property upon the credit of these goods, did not stand upon the same ground as a *bona fide* purchaser. *Bradley* v. *Obeare*, 10 *N. H.* 477.

Another objection to the charge, is, that the court did not tell the jury, that the demands were insufficient, because the title of the plaintiffs was not made known to the defendant. In answer to this, it is said, in the first place, no demand at all was necessary, as the taking was tortious. It is true, that where there is a tortious taking, a demand can no more be necessary than if the action was trespass for the same taking.

We are not satisfied, however, that this case is of that character. *Denison* must have had a qualified interest in these goods, liable to be defeated—as a contract made with an infant—until his election is made, we see not why it might not be legal, or even perhaps the duty of the sheriff to secure that interest. If so, the seizure was not a tortious act. Of course, to establish the plaintiffs' claim, a demand must be made.

The court below proceeded upon that idea, but told the

jury, that if upon such demand, there was an unqualified refusal to deliver the property without requiring any evidence of the plaintiffs' title, or expressing any doubts about the same, they might presume a waiver of his claim to such information; and we concur entirely in this opinion.

The defendant was an officer, whose situation is frequently one of much difficulty, from the conflicting claims by which he is surrounded; and he is entitled to a liberal construction of his acts. But he must act fairly and reasonably. If property, which came rightfully into his hands, is demanded, by a stranger, he will be protected in requiring reasonable information as to the rights of the person making demand, if he has any reasonable doubt upon the subject; and should be protected in any reasonable delay necessary to procure information. But when he asks for no delay; when he does not profess to have any doubt; but gives an unqualified refusal; he assumes upon himself the responsibility of deciding, and without enquiry and without hesitation, that his rights are superior to the plaintiffs'.

From a very early period it has been holden, that it is good evidence *prima facie* to prove a conversion, that the plaintiff required the defendant to deliver the goods, and he refused; and thereupon it shall be presumed he converted them to his own use. *Chancellor of Oxford's case,* 10 *Co.* 56. *Agar* v. *Lisle, Hutt.* 10. And *Holt,* Ch. J. went so far as to say, that the very denial of goods to him who has right to demand them, is an actual conversion. *Baldwin* v. *Cole,* 6 *Mod.* 212. The true principle, however, is given in *Isaac* v. *Clark,* where the court all agreed, that *prima facie* a denial, when demanded, is good evidence to a jury of a conversion; but if the contrary be shown, then the same is no conversion. 2 *Bulst.* 314. This principle is recognized, by Judge *Story,* in *Watt* v. *Potter,* where a question was made as to the authority of the persons making the demand. The learned Judge, admitting that such persons must have authority, adds, but if the refusal does not turn upon the supposed want of authority,—if the party waives any enquiry into the authority, or admits its sufficiency, and puts his refusal upon another distinct ground, which cannot, in point of law, be supported,—then the refusal, under such circumstances, is presumptive evidence of a conversion. 2 *Mason,* 81. Here,

though he did not state his grounds for refusal, yet he made an unqualified refusal. This, then, unexplained, is evidence of a conversion. He does not attempt to explain it ;—he asks no information, nor any delay, that he may enquire;—he does not pretend, that he does not understand the nature of the plaintiffs' claim, or has a lien for which he seeks indemnity, but contents himself with a cool unqualified refusal. The fair presumption then is, that he relied upon the indemnity of the creditors, or knowing the nature of the plaintiffs' claim, he was ready to put them at defiance. Thus he denied the plaintiffs' right, and waived any claim in support of it.

<span style="float:right">*Hartford,* June 1844.<br>Thompson<br>*v.*<br>Rose.</span>

Another exception taken to the charge, is much of the same character, *viz.* that the court should have told the jury, that the defendant had right to detain the goods until the freight was paid, which the officer had paid to the common carrier. To this the plaintiffs reply, that the defendant could not, by his wrongful act, acquire any lien upon the goods ; nor could such lien be assigned. It has been adjudged, that a lien could not be acquired, by a tortious act. *McCombie* v. *Davies,* 7 *East,* 5. *Everett* v. *Saltus,* 15 *Wend.* 478. But, we have held, that in the situation this property was in, the defendant might attach it ; and if he might seize it, it would seem to follow, that he must take legal measures to secure it. This could not well be done, but by taking it into his possession ; and he could not do this, without regard to the rights of those who had some superior interest in it. It would seem, therefore, as if upon this attachment, the officer must, to secure the benefit of it, pay the lien, and take the property into his possession ; and if so, we think it would follow, that he must stand in the place and have the rights of the person whom he has, as it were, been involuntarily compelled to indemnify. But here again, the defendant is met, and we think conclusively, with the fact, that he set up no such claim at the time, but made an unqualified refusal. Had this refusal been qualified, by this claim of lien, the plaintiffs might have met it, and obviated it ; but the defendant keeps it a secret in his own breast, and now seeks to defeat the plaintiffs' action, by a claim before unknown.

In *Thompson* v. *Trail,* 2 *Car. & Pa.* 334. (12 *E. C. L.* 156.) where goods had been delivered on board a vessel, and a receipt taken, the vendee having failed, the shipper de-

manded the goods, but made no offer of freight or compensation. The captain, upon demand, merely said, he had signed a bill of lading. Ch. J. *Abbott* said, this was a conversion; though it was insisted, that he had a right to compensation. The Ch. J. added, if the captain says, "I can't deliver the goods to you, but will deliver them to *A, B,* or *C ;* that is a conversion." And in *Everett* v. *Saltus,* 15 *Wend.* 4 ı4. 478. where the defendants claimed, upon demand, to be purchasers of the property, and upon the trial claimed a lien, the supreme court held, that if the defendants had a lien, they waived it, by not putting themselves on that ground, when the property was demanded. They denied the plaintiff's right, and set up a title in themselves, independent of the lien.

Whoever, says Judge *Story,* undertakes tortiously to deal with the property of another as his own, or tortiously detains it from the owner, is, in contemplation of law, guilty of a conversion of it. 2 *Mason,* 81. When, then, the defendant had in his possession the property of the plaintiffs, and refused to deliver it up, on demand, he assumed to deal with it as his own, and in effect denied the right of the plaintiffs.

If he had a claim unknown to the plaintiffs, fair and correct dealing required that he should make it known, that the plaintiffs might be apprised of the right which he claimed, and have opportunity to cancel it, or contest it. The defendant chose to place himself upon other grounds, by this unqualified refusal ; and we are all of opinion, that he must abide the issue which he chose to take ; and that there should be no new trial.

In this opinion the other Judges concurred.

New trial not to be granted.