[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action in four counts for the collection of money alleged to be due to the plaintiffs from the defendants. The first count alleges breach of an agency agreement, the second count alleges conversion of monies by the defendants, the third count alleges conversion of records and expirations by the defendants, the fourth count alleges the personal liability of the individual defendant officer because of claimed participation in the commission of a tortious act. CT Page 2972
The plaintiffs in the case are Fireman's Fund Insurance Company, a California corporation authorized to do business in Connecticut; The American Insurance Company, a New Jersey corporation authorized to do business in Connecticut; and National Surety Corporation an Illinois corporation authorized to do business in Connecticut. The defendants are Sheridan Associates, Inc., a Connecticut corporation with its principal place of business in South Windsor and Robert J. Sheridan an officer and agent of Sheridan Associates, Inc.
On August 1, 1983 Sheridan Associates, Inc. became an agent for the plaintiffs. An agency agreement was executed on that date under which Sheridan Associates, Inc. (Sheridan) was authorized to collect premiums from insured under policies issued by one or the other of the plaintiffs through the efforts of Sheridan and to retain from said collected premiums its commissions. Sheridan was obligated to pay the premiums net of its commissions to whichever of the plaintiffs issued the policies on which the premiums were paid.
Initially Sheridan was on an agency billing procedure under which pursuant to the agency agreement, Sheridan was responsible for sending all policies, endorsements, renewals, interim reports, request for audit information and other materials to the insured at their own expense. Sheridan under this procedure had to collect premiums. After Sheridan billed an insured and collected premiums it was to keep the commission earned on them and send the plaintiffs the balance. Sheridan elected the account current method of doing this.
Under the account current method a statement of accounts is sent by Sheridan to the plaintiffs. This statement must include the premiums for all items received from the plaintiffs that are effective during or prior to that month and all items issued by Sheridan with an effective date during or prior to that month. This statement must be received by the plaintiffs before the eleventh day of the following month and payment of the amount due for this statement must be received by plaintiffs before the twentieth day of the next month.
Under the agency agreement should Sheridan not be able to collect some premiums, Sheridan will still be responsible for paying them unless the plaintiffs are notified in writing that Sheridan cannot collect them. This is to be done by Sheridan's entering the item on its statement for the month as both debit and credit and advising plaintiffs in a separate memorandum sent along with the account current.
Under the agency agreement Sheridan holds all premium CT Page 2973 payments received as trustee for the plaintiffs.
In January of 1985 the billing system used between plaintiffs and Sheridan was changed to the company billing statement system under which on the first day of each month plaintiffs sent a bill to Sheridan for the amount to be paid by Sheridan no later than the fifteenth day of each month.
Plaintiffs furnished to Sheridan their billing statement as of September 1986 and as of October 1986. These statements reflect net premiums due plaintiffs of $80,308.67 as of September 1, 1986 and $76,852.54 as of October 1, 1986. No payments were received from Sheridan as to either of these amounts.
Under the terms of the agency agreement Sheridan held premiums collected in a fiduciary capacity for plaintiffs. The September 1986 and October 1986 statements show premiums due and outstanding from Mitchell Trucking. A two year summary statement detailing insurance coverage for 1984-1985 and 1985-1986 for Mitchell Trucking shows total premium charges of $345,939.00 for those periods. Payments by Mitchell Trucking confirmed by canceled checks made out to Sheridan by Mitchell Trucking totaled $333,737.46 for a balance still owed by Mitchell Trucking of $12,201.54. Fireman's Fund Insurance Company received $233,434.00 from Sheridan leaving a balance still due from Sheridan for monies received by Sheridan from Mitchell.
During the period that the agency agreement was in force questions were raised from time to time by plaintiffs with Sheridan about discrepancies in the billing statements and premium payments remitted by Sheridan. The last prior to the termination of the agency agreement by plaintiffs were raised in December of 1984 when differences ranging from $78,000 to $90,000 were identified. Subsequent reconciliation of figures reduced this to $45,000. Sheridan paid this amount. However, effective January of 1985 the billing method was changed to company billing.
The mounting discrepancies which culminated in the termination of the agreement by plaintiffs began in March of 1986 with a difference between premiums due and remitted in excess of $75,000. A meeting between plaintiffs and Robert Sheridan took place on June 6, 1990 to get at the account differences. follow-up meeting which was to have taken place ten days later did not, with plaintiffs taking the position that they were not interested in proceeding further with Sheridan and expecting of Sheridan those monies plaintiffs' records showed due and outstanding from Sheridan. Two subsequent statements were received by Sheridan from plaintiffs which Sheridan did not process. No further statements were received after the November 1986 statement. The instant suit followed. CT Page 2974
In the earlier conversations between plaintiffs and Sheridan, Sheridan laid much of the account discrepancies to plaintiffs' failure to recognize that customers who were on instalment payments were being treated as full premiums due customers. These were premiums which Sheridan referred to as premiums not yet due. However, from June 6, 1990 Sheridan made no further effort to collect premiums. The agency agreement was formally terminated by the plaintiffs effective November 11, 1990. A certified letter dated October 1, 1986 sent by plaintiffs making formal demand to audit and verify all financial and accounting records of Sheridan was ignored by Sheridan. This was followed by a demand letter dated October 23, 1986 from plaintiffs to Sheridan demanding payment on the account of July 1986 transactions (due September 15, 1986) in the amount of $80,308.67 and the August 1986 transactions (due October 15, 1986) in the amount of $76,852.94. Sheridan made no payment.
The failure to pay over monies belonging to another is wrongful and fraudulent. Such conduct constitutes a conversion. See Thompson v. Rose, 16 Conn. 71 (1844). "Money can clearly be subject to conversion." Omar v. Mezvinsky, 13 Conn. App. 533,536 (1988). Even though possession of the monies may initially have been rightfully obtained, its continued wrongful detention constitutes conversion, a tortious taking. Coleman v. Francis,102 Conn. 612, 615-616 (1925).
Plaintiffs' argument in conversion as to Sheridan is that the plaintiffs are owed monies totaling $267,414.31; that said monies, belonging to the plaintiffs, were paid or were to have been collected and held in trust under a fiduciary relationship for the plaintiffs; that the monies, however, have not been remitted to the plaintiffs; and, no explanation has been put forth as to why the monies have not been paid.
Plaintiffs' argument that Robert Sheridan is personally liable because he participated in the commission of a tortious act is premised on his being an officer of Sheridan. "When insurance agencies collect premiums that are deemed by local law to be received in trust, officers and directors of the agency corporation may be liable for any irregular treatment of the premium monies collected." Harnett, Responsibilities of Insurance Agents and Brokers, Vol. 2 Section 14-03[5], p. 14-29. Robert Sheridan executed the agency agreement on behalf of Sheridan. On the basis of personal contact with Robert Sheridan it was understood that he was the principal of Sheridan. He engaged in the day to day operations of Sheridan. He participated in review of company statements and in the making of notations on these statements. He individually participated in meetings held to resolve discrepancies in the accounts at issue. In fact he CT Page 2975 acknowledged that he handled those accounts.
In the fourth count of their complaint the plaintiffs allege: "Upon information and belief, Robert J. Sheridan, as an officer and agent of Sheridan, was individually involved in and responsible for the wrongful and fraudulent endorsements of said net premiums . . ." In the brief in support of their motion to dismiss the fourth count, the defendants argue that the plaintiffs have failed to put forth any evidence whatsoever that there has been any wrongful disbursement; that no one was produced who testified that Robert Sheridan, disbursed or caused to be disbursed in an improper manner or for an improper purpose any funds in the possession of the corporate defendant. The defendants argued further that the plaintiffs produced no documentary evidence of such disbursements.
In fact, on rebuttal the plaintiffs produced both testimony and documentary evidence which conclusively established that premiums paid by Mitchell Trucking had been received by Sheridan and had not been remitted to the plaintiffs. ". . . an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby . . . (cites omitted)." Scribner v. O'Brien, 169 Conn. 389, 404 (1975).
Count three speaks to the records and expirations alleged to have been retained by Sheridan even though under the agency agreement they became the property of the plaintiffs as of November 11, 1986, the termination date. Under Section 4, YOUR RECORDS — YOUR RIGHTS AND OUR RIGHTS, the agency agreement provides that when the agreement ends, if the agency has not properly accounted for and paid all premiums owed the plaintiffs, agency records including expirations become plaintiffs' property. The defendants have withheld wrongfully the agency records and expirations which under the terms of the agency agreement belong to the plaintiffs.
On the facts found the court concludes that the plaintiffs have carried their burden as to each and every count of their complaint.
Judgment may enter against Sheridan Associates, Inc. on the first count in the amount of $113,755.74 together with interest thereon at the rate of 10% per annum from October 15, 1986.
Judgment may enter against Sheridan Associates, Inc. and Robert J. Sheridan on the second and fourth counts in the amount of $90,853.20 together with interest thereon at the rate of 10% CT Page 2976 per annum from July 1, 1986.
Judgment may enter against Sheridan Associates, Inc. on the third count in the amount of One Dollar.
HENNESSEY, J.