Everett
v.
Saltus.

### EVERETT *vs.* SALTUS.

Where goods are shipped at one port, consigned to particular individuals at another, and the vessel puts into an intermediate port in distress, where the master transfers the goods to another vessel, but instead of taking a bill of lading for their delivery to the *original consignees,* takes a bill for delivery to his own order, and by his directions the goods are delivered to a mercantile house different from the original consignees, who sell the same, the purchaser, notwithstanding that he pays a *bona fide* price for the goods, is liable for their value to the *owner;* the master with whom the goods were originally shipped having no authority to dispose of the goods, either by himself or his agents.

The *lien* of the master of a vessel on a cargo, for freight, average and charges, may be asserted by his factor or agent; but if the factor sells the goods, and the master had no authority to direct the sale, the *purchaser* of the goods cannot set up the *lien,* and require it to be discharged before suit against him for the goods.

A party who, upon being called upon to account for goods which have come to his hands, sets up *title* in himself *independent of a lien,* cannot, afterwards, when an action is brought against him, defeat a recovery by setting up at the trial, a right to detain the goods, on the ground of a lien.

Where there is an unqualified consignment of property, the legal presumption *is,* that the *consignee is the owner,* and an action for a conversion of the property or injury to it may be brought in his name; but the suit need not, of necessity, be in his name, but may be in the name of the *real owner.*

ERROR from the supreme court of the city of New-York. This was an action of *trover,* brought by E. Everett, against F. and N. Saltus, for a quantity of *lead.* In *August,* 1825, *Bridge & Vose,* merchants at New-Orleans, shipped 179 pigs of lead on board the brig *Dove,* of which *William Collins* was master, consigned to Messrs. *Tufts, Everleth & Burrell,* of New-York, on account and risk of *Otis Everett,* the plaintiff, to whom they were referred for instructions. The *Dove* put into *Norfolk,* in distress, and part of the lead was sold, to pay expenses, and the residue was transferred in December, 1825, by an agent of Capt. Collins, to the schooner *Dusty Miller,* Captain *Johnson,* who signed a bill of lading, acknowledging the lead to have been shipped by F. M., agent for *William Collins,* and promising to deliver the same in New-York, to order, on payment of freight. The *Dusty Miller* met with a disaster on her voyage to New-York, and on her arrival there, the lead, by the

order of Captain Miller, was delivered to the firm of *Coffin & Cartwright,*who paid the freight,and $72,87,the *average contribution* charged upon the lead, for the loss occasioned by the disaster to the *Dusty Miller.* On the 9th March,1826, *Coffin & Cartwright* sold the lead to the Messrs. Saltus, the defendants, for $542,74, and received payment. The freight of the lead from New-Orleans to New-York amounted to $14,72. Everett brought an action against *Coffin & Cartwright,* to recover the value of the lead, but was *nonsuited;* in failing to prove that before suit brought, he offered to pay the *freight, average* and *charges* to which the lead was liable, and which had been advanced by Messrs. Coffin and Cartwright, and this court, on application, refused to set aside the nonsuit. *See* 6 *Wendell,* 603. In October, 1831, the plaintiff demanded the lead of the Messrs. Saltus, and offered to pay any lawful demands they had on the same ; to which they answered, that they would have no *further* communication on the subject. It was proved that in March,1826,one of the firm of *Tufts, Everleth & Burrell* demanded of the Messrs. Saltus the lead, or its value, and received for answer, that they had bought the lead, and paid for it, and would not do any thing about it. Upon this evidence the plaintiff was again nonsuited. Whereupon he sued out a writ of error.

*R. Sedgwick & S. P. Staples,* for the plaintiff in error.

*T. T. Payne,* for the defendants in error.

*By the Court,* Bronson, J. Most of the questions discussed on the argument were decided in the action brought by the plaintiff, *Everett,* against *Coffin & Cartwright,* 6 *Wendell,* 603. The defendants insist, however, that the suit should have been brought by *Tufts, Everleth & Burrell,* to whom the goods were shipped by *Bridge & Vose.* It may be conceded, as a general rule, that where goods have been consigned to an individual, the action for a conversion, or other injury to the property, must be brought by the *consignee.* If the goods have been placed at his absolute disposal, and no other fact appears, the legal presumption is, that he is the true owner.

But there is no positive regulation or commercial usage which determines who shall sue for an injury to the property. Neither the consignor nor consignee, *as such*, is to bring the action; but *the owner* of the goods. The presumption of ownership which results from an unqualified consignment may be rebutted; and whenever it appears that the person suing is the real owner, there is an end to the objection that the action should be brought in the name of the consignee. *Potter* v. *Lansing*, 1 *Johns. R.* 223. *Davis* v. *James*, 5 *Burr.* 2680. *Dawes* v. *Peck*, 8 *T. R.* 330. What were the facts? *Bridge & Vose* shipped the goods at *New-Orleans* to *Tufts & Co.* of *New-York*; they paying freight. The bill of lading was enclosed in a letter to the consignees, advising them of the shipment of the goods to their address, and that the property was shipped "*on account and risk* of Mr. Otis Everett, of Boston, from whom you will please receive instructions respecting the disposal of it." *Tufts & Co.* were further instructed, if the Boston market was better than that of New-York, to forward the lead to Boston, "without waiting to hear from Mr. E." If there could be a doubt upon this evidence that the plaintiff, and not the consignees, owned the property, that doubt must be removed by the testimony of *Tufts*, who was one of the house of *Tufts & Co.* to whom the goods were consigned. He swears, that so far as he knows or believes the property belonged to the plaintiff. The action was properly brought by Mr. Everett.

The defendants rely most strongly on the ground that they were *bona fide* purchasers of the property, under such circumstances as will protect them against the claims of the true owner. That they purchased in good faith, and paid the market value, cannot be questioned; but they unfortunately contracted with one who had no right to sell. *Coffin & Cartwright* seem to have acted as the agents of *Capt. Collins*; and the enquiry is, what authority had *Collins* to dispose of the goods. This question was considered in the former case; but the defendants think they stand on better ground than *Coffin & Cartwright* did—that may be true, for Coffin & Cartwright were only the agents of *Collins*, and the defendants are *bona fide* purchasers. They then insist that *Capt. Collins* had in

New-York the usual documentary evidence of title ; and that both of the parties in controversy being equally innocent, the loss, in consequence of the wrong act of *Collins* in selling the goods, should fall on the plaintiff, who enabled him to commit the fraud. This argument would be unanswerable, if *Tufts & Co.*, the original consignees, had sold the goods. *Lickbarrow* v. *Mason*, 2 *T. R.* 70. *Root* v. *French*, 13 *Wendell*, 572. 15 *East*, 38. But neither the plaintiff nor his agents furnished *Collins* with any documentary evidence of title ; nor have they enabled him to commit the fraud in any other way than that of putting the goods at *New-Orleans* on board the *Dove*, of which he was *master*, and taking from him a bill of lading to deliver the property to the consignees in *New-York*. The only documentary evidence which *Collins* had in *New-York*, to prove his authority to dispose of the goods, was evidence made by himself, or by *Myers*, his agent at *Norfolk*. The *Dove* put into *Norfolk* in distress, and *Collins* there sold a part of the lead to pay charges. It is impossible to say, upon the facts disclosed on this trial, that the sale there was a legal one ; but that question does not arise in this case. *Collins* then caused the rest of the lead to be shipped for *New-York* on board the *Dusty Miller*, of which *Johnson* was the master, and took a bill of lading to his own order. This was an unauthorized act on his part. No sufficient reason is shown why the *Dove* did not resume and complete her voyage to *New-York* ; *Abbott*, 240 ; but if there was any necessity for employing a new vessel, the goods should have been forwarded to *Tufts & Co.*, the original consignees. The plaintiff, then, has done nothing to enable *Collins* to commit the fraud, beyond the mere shipment of the goods at *New-Orleans*. The only remaining inquiry on this point is, what authority has the *master* over the goods on board his vessel ? They are committed to him as a *common carrier*, to be delivered to the consignee at the place of destination, and not as an *agent*, to sell or otherwise dispose of the property. In case of *necessity*, an urgent or *absolute* necessity, as some of the cases lay down the rule, he may sell the cargo or hypothecate the ship. . A sale under such circumstances will bind the owner ; but if the transfer is not required by the circumstances in

which the master is placed, no title will pass to the purchaser. *Abbott*,241,4. *Freeman* v.*East India Co.*,5 *Barn.&Ald.*617. It would be a most dangerous doctrine to hold that the *master* of a vessel can dispose of the cargo at pleasure, or whenever he chooses to put money in his own pocket, as was the case of the sale made by Collins. Independent of the character of *master*, the most that can be said of the right of *Collins* to sell is, that he was lawfully in possession of goods which belonged to another. He was not entrusted with the property for the purpose of selling it, and could transfer no title to the purchaser. *Williams* v. *Merle*, 11 *Wendell*, 80.

The only remaining question relates to the supposed *lien* for freight and charges. Some disaster happened to the *Dusty Miller* after she sailed from *Norfolk*, on account of which an average was charged on the lead. This constitutes the principal item, the freight amounting to less than fifteen dollars. Under the circumstances of this case, it may be doubted whether *Collins* had any lien for this average—his conduct at *Norfolk* not having been justifiable. But waiving that question, how has the *lien* of *Collins* been transferred to the defendants? The general doctrine on this subject is, that *liens* are personal, and cannot be transferred. The party may however deliver the property to another, with notice of the *lien*, to hold it as his servant or bailee, and then the lien will accompany the goods; but it is quite clear that a lien will not pass by a *tortious act*, such as selling or pledging the goods. *Coffin & Cartwright*, in the action against them, were regarded as the mere servants or agents of *Collins*, and as such they might assert the lien; but here the defendants claim as *purchasers*, and acquire all the right they have from a *tort feasor*. I know of no principle on which they can set up a *lien*. *McCombie* v. *Davies*, 7 *East*, 5. *Ingersoll* v. *Van Bokelin*, 7 *Cowen*, 680. But if the defendants had a *lien*, they waived it by not putting themselves upon that ground when the property was demanded by the plaintiff's agent. They claimed the property as *purchasers*, and said they would do nothing about it. They denied the plaintiff's right, and set up a title in themselves independent of the

*lien.* Under such circumstances, a tender of the freight and charges was unnecessary.

It does not appear on what particular ground the plaintiff was nonsuited ; but I have been unable to discover any valid objection to the action.