### Merian and others *vs.* Funck and others.

</div>

The consignee of goods imported into the United States is not liable to the ship owner for freight, unless he accept and receive the property.

And where the consignee of goods which by the bill of lading were deliverable to him or to his order on payment of freight, before an actual delivery endorsed the bill of lading to other parties, who received the property; *held* that the consignee was not liable for the freight.

And the rule is the same though before the endorsement of the bill of lading the goods are received into the public store under a general order to discharge the ship.

Error to the superior court of the city of New-York. Funck and the other defendants in error sued Merian & Benard in the

court below, in assumpsit, for freight and primage on a quantity of goods shipped at Havre, and brought to the port of New-York in the packet ship Baltimore, of which the plaintiffs were the own ers.    The first parcel, consisting of nine packages, was received into the public store in New-York, on a general order to discharge the ship, on the 11th of November, 1839, and was delivered therefrom to Messrs. Mainon & Bonnay on the 22d of February thereafter.    The other parcel, consisting of ten packages, was brought on a subsequent voyage of the ship Baltimore, five of which were received into the store on a like order on the 26th of March, 1840, and delivered to Mainon & Bonnay on the 22d ot April thereafter, and the remaining five packages were delivered to the same persons from the ship.    The bills of lading signed by the master were produced, and by them it appeared that the goods were shipped at Havre by one J. Troussel, and that the master engaged to carry them to the port of New-York, and *there to deliver them to the defendants or to their order, on paying freight and ten per cent. primage.*    When the ship arrived at New-York upon each of the voyages, the plaintiffs' agent caused a bill of the freight of these goods, and of other goods imported by the defendants in the same vessel, to be made out and presented to the defendants.    They requested that the freight now in question should be made out by the agent in separate bills against Mainon & Bonnay, which was done ; and the bills for such freight were presented to them and they repeatedly promised to pay the amount.    They failed in July, 1840, without having paid the bills, having on that day executed a general assignment for the benefit of their creditors, to the defendants, to whom they owed a considerable amount. The goods for which freight is claimed in this suit, or a considerable part of them, passed under this assignment.    The bills of lading were severally endorsed by the defendants, with a direction to deliver the goods to Mainon & Bonnay.    The endorsement on the bill of lading of the first parcel was dated February 21, 1840 ;  the other endorsement was without date.

Pierre Bonnay, one of the firm of Mainon & Bonnay, was examined on the part of the defendants, and testified that the

goods on which the freight was charged were ordered and pur-chased by the witness' house of a house in France, and that the defendants had no interest in them; that they were for-warded to the witness through the defendant's house, in order that the witness might settle for the purchase price with the defendants, according to a practice which prevailed in respect to importations by the witness through the defendant's house; that the invoices of the goods were made out to the witness' house, but the bill of lading was sent to the defendants, to be transferred on their receiving payment of the cost of the goods.

The court charged the jury that the defendants were liable for the freight claimed, unless there was an express agreement on the part of the plaintiffs to look to Mainon & Bonnay for the same and to absolve the defendants from their obligation. The defendants' counsel excepted, and the jury gave a verdict for the plaintiffs, upon which the court below rendered judgment. A bill of exceptions having been signed, the defendants brought error.

*W. W. Van Wagenen,* for the plaintiffs in error.

1. The consignee, as such, is not necessarily liable for the freight: if he be an agent without interest he cannot be charged with its payment. (*Ward* v. *Felton,* 1 *East,* 507; *Coleman* v. *Lambert,* 5 *Mees. & Welsb.* 502; *Amos* v. *Temperley,* 8 *id.* 798.)

2. It is the receipt of the goods which creates the obligation to pay freight, and if they be delivered to the endorsee of the bill of lading, he thereby becomes liable to the ship-owner for the freight. The goods remain subject to the lien for freight after being placed in the public store. (3 *Kent's Com.* 220; *Abbott on Shipping, Story's ed.* 285, *and cases cited; Cock* v. *Taylor,* 13 *East,* 399; *Trask* v. *Duvall,* 4 *Wash. C. C. R.* 184.)

3. Where goods are shipped under the usual bill of lading in a general ship, the master must obtain the freight from the party who receives the goods; and if he parts with them leav-ing the freight unpaid, no other party is responsible for it. (*Drew* v. *Bird,* 1 *Mood. & Mol.* 156; *Barker* v. *Havens,* 17 *John.* 237.)

4. When the ship-owner delivers the goods to the endorsee of the bill of lading, and charges him in his books with the freight, he cannot afterwards have recourse to the consignee. (*Tobin* v *Crawford*, (5 *Mees. & Welsb.* 235 ; *S. C. in Ex. Cham.*, 9 *id.* 716.)

*M. R. Zabriskie & H. S. Dodge*, for the defendants in error, insisted that the delivery of the goods into the public store, before any endorsement had been made upon the bills of lading, was a delivery to the defendants—the consignees. Up to that time they had given no notice that the goods were not theirs. In *Harris* v. *Dennie*, (3 *Peters*, 292,) the goods were attached under process in a private suit against the consignee, before they had reached the custom house store ; and in that case it was correctly held that the attaching creditor acquired no lien as against the government. It would have been otherwise if the goods had been attached after being placed in the public store. It is impossible for the freighter to inquire into the different interests of parties acquiring title under the consignee. He is *prima facie* liable, and can only defend against the claim by showing that the ship-owner has delivered the goods to an endorsee after the transfer to him. The *dictum* in 3 *Kent's Com.* 220, that the master may enter the goods in the public store house in his own name, in order to preserve his lien for freight, is correct under the English revenue laws, but is inapplicable here, where the warehousing system has not been established. (*Artazu* v. *Smallpiece*, 1 *Esp. N. P. Rep.* 24.) It is admitted that where the bill of lading is transferred by endorsement before the goods are delivered, and they are then delivered to the endorsee, that he is substituted for the consignee, and is the party liable for freight. This was the case in *Tobin* v. *Crawford*, and *Sanders* v. *Vanzeller*, 4 *Adolph. & Ellis*, N. S. 260,) was decided on the same principle. (*See also Abbott on Shipping*, 414, *Lond. ed.*) Here the master and owners did not attempt to preserve their lien. They gave credit to some one, and the question is, upon whom did they rely? The defendants never refused to receive the goods.

They were only agents, it is true, but they were the agents of the consignors, and not of Mainon & Bonnay. They received the goods and became liable for freight, and then made the transfer to Mainon & Bonnay, after being satisfied as to the cost.

*By the Court,* JEWETT, J. The obligation to pay freight rested on the bill of lading, by which its payment was made a condition of delivery to the consignee or to his order. The master was not bound to part with the goods until the freight was paid; but he did not, by delivering the goods before payment, waive or discharge his legal right to demand payment of the person who, by the principles of law, was primarily liable to pay. It is well settled that when the goods, by the terms of the bill of lading, are to be delivered to the consignee or to his order, on payment of freight, the party receiving them, whether the consignee or an endorsee, to whom the bill of lading has been transferred by the consignee, makes himself responsible for the payment of the freight. The law implies a promise on his part to pay the freight, such being the terms on which, by the bill of lading, the goods were to be delivered. The person who accepts and receives the property thereby makes himself a party to the contract. In this case the goods were consigned to the defendants, or to their order. They endorsed the bills of lading and ordered a delivery to Mainon & Bonnay, to whom the goods were delivered. They, and not the defendants, were therefore bound to pay the freight. (*Cock* v. *Taylor,* 13 *East,* 399; *Trask* v. *Duval,* 4 *Wash. C. C. R.* 184.)

In *Tobin* v. *Crawford,* (5 *Mees. & Wels.* 235,) affirmed on error in the exchequer chamber, (9 *id.* 716,) the bills of lading made the goods deliverable to the shipper's order, or to his assigns, on paying freight; the shipper endorsed the bills of lading and forwarded them to the defendants, who endorsed them to their agents, and the agents received the goods. It was held that the defendants were not liable for the freight, because the contract was with the shipper in the first instance, and afterwards with the agents receiving the goods, but not with the defendants, they having given no authority, express or implied,

to pledge their credit for the freight. The only authority which could be implied, was to receive the goods, paying the freight on delivery. The case establishes the principle that the party who actually receives the goods under the bill of lading becomes thereby a party to its stipulations respecting freight. The charge of the court below was therefore erroneous, and the judment must be reversed.

<div align="right">Judgment reversed.</div>