THE NEW YORK AND HAVRE STEAM NAVIGATION COMPANY *v.* DANIEL T. YOUNG.

The assignee of a bill of lading, who as such receives the goods, is liable for the freight, although the assignment of the bill of lading was made after the goods were sent to the public warehouse under a general order to discharge the ship.

ACTION by a steamship company, for freight upon goods consigned at Havre, in one of their vessels, to Messrs. Caffe and Cutter, importers, in New York. It was provided in the bill of lading that the goods should be delivered to the consignees, or to their assigns.

Upon their arrival at this port "the goods were placed in the bonded warehouse, as was customary." The plaintiffs had previously brought, in their vessels, goods for Caffe and Cutter, who had invariably received them from the public store without immediate payment of freight, bills therefor being subsequently made out and collected. After removal to the public warehouse, no lien had ever been claimed by the shippers, and the consignees had always received goods from the collector of the customs without paying freight thereupon, and without obtaining any release or permit from either the plaintiffs or the consignors.

While the goods now in question were lying in the public store, the consignees became insolvent, and executed to the defendant a general assignment in trust for the benefit of creditors. Having thus been constituted a general assignee, the defendant procured the blank endorsement of the con-

signees upon the bill of lading, and by the direction of the collector received the goods upon paying the duties. The usual affidavits at the custom house mentioned the consignees as the owners, and stated that the defendant was acting in the character of assignee.

The plaintiffs afterwards made out, in the names of the consignees as debtors, and presented to them, a bill for the freight of these goods, and of others previously transported in another ship. Such bill being unpaid, they brought this action against the defendant to recover the freight from him.

On the trial, a statement of facts was agreed upon by the parties, in substance and mainly in form as above recited ; and the question to be determined was, Whether the defendant had rendered himself, as regarded the plaintiffs, personally liable for the freight; or whether, on the other hand, the ship owners were left upon the same footing as other creditors of Caffe and Cutter, under the assignment.

The plaintiffs recovered, and the case now came before the court on appeal from a judgment entered in their favor against the defendant.

*L. F. Therasson* and *John A. Bryan,* for the defendant, made the following points :

I. The freight was earned, and Messrs. Caffe and Cutter being the debtors of the respondents therefor, the latter had a choice of remedies, either to insist on their lien for the freight, and hold the goods for satisfaction; or to treat Caffe and Cutter as ordinary debtors.

They chose the latter course, as they were accustomed to do on prior freights, and the goods were thereby relinquished from the lien. While the goods were free, and Messrs. Caffe and Cutter were the parties to whom the respondents looked for payment, they failed in business, and made a general assignment to the appellant for the benefit of creditors. In the performance of his duty as assignee, the appellant proceeded to take the goods out of the public store, where they had been

for some time held by the collector of the port, subject only to the payment of duties. The presentation of the bill of lading by the assignee was necessary for this purpose; and he presented it, with the blank endorsement of C. & C., paid the duties, and removed the property. There was no demand of freight, and in the absence of such a demand he might well have supposed it to be paid.

The bringing of this action undeceived him, and this comprises the whole case as we understand it.

II. It is true that the obligation to pay freight rested on the bill of lading, by which its payment was made as a condition of delivery to the consignees or to their order, and that the owners of the vessel were not bound to part with the goods until the freight was paid. This is put beyond controversy by a number of cases, one of the most recent and the strongest of which is that of *Merian* v. *Funk*, 4 Denio, 110. The reason of the decision in that case is stated in the opinion of the court, as follows: "The law implies a promise on the part of the assignee to pay the freight, such being the terms on which, by the bill of lading, the goods were to be delivered, and the party who accepts and receives the property, thereby makes himself a party to the contract." But our case materially differs from that. For by the course of dealing between the respondents and Messrs. Caffe and Cutter, a delivery of the goods into the public store was equivalent to an actual delivery to the consignees; and thus the bill of lading was satisfied so far as the respondents were concerned. Their care of the goods ceased. When we received the goods the lien for freight was gone, and the basis of any implied promise on our part to pay the freight went with it. After this the collector had the only right to hold the goods, and this right depended on the payment of duties, and had nothing whatever to do with the freight. The assignee in our case was neither expressly nor by implication a party to any contract with the respondents, but the contract was completed when the goods were delivered into the public store, and especially so when the respondents actually looked to the consignees for payment.

III. Besides this, the respondents treated Messrs. Caffe and Cutter as their debtors, even after the assignee had received the goods, and also after that very essential " implied promise" which, according to the decision above referred to, must have been made by us, if at all, when we received the goods, and which must exist in order to make our liability complete.

IV. The rule of law making the assignee or endorsee of the bill of lading liable for freight is predicated upon the fact that the goods are liable to be held under the lien therefor, and that this lien forms the consideration for an implied contract or promise on the part of the assignee or endorsee to pay the freight if the claimant will release the lien. No such implied contract can be urged against the defendant, because the lien, which could be the only basis of its consideration, did not follow the goods into his hands.

*Walter L. Livingston,* for the plaintiffs, made the following points :

I. The goods having been shipped under a bill of lading, by which it is expressed that the goods are to be delivered in New York to Caffe and Cutter, or to their assigns, he or they paying freight for the same, Daniel T. Youngs, the endorsee of the bill of lading, became the debtor to the respondents for the freight of said goods, and not Caffe and Cutter, the consignees. (*Cook* v. *Taylor,* 13 East's R. 399 ; *Merian* v. *Funk,* 4 Denio, 110 ; Story on Agency, p. 365, § 274 ; Abbott on Shipping, p. 421, 422.)

II. The holders of a bill of lading are bound to know that they are liable for the freight. (Story on Agency, p. 367, note.)

III. The ship owner being obliged by law to discharge his ship under general order, and send the goods to the United States bonded warehouse within a certain number of days after her arrival in port ; a delivery in the bonded warehouse under general order is not necessarily a delivery to the consignee named in the bill of lading ; but it is a delivery to the consignee or his assigns, as the case may be. If the consignee takes the goods out himself, then the delivery in the bonded

warehouse is to be considered a delivery to him ; but if he endorses the bill of lading and delivers it to another person, who takes the goods out of the bonded warehouse under the bill of lading so endorsed, then the delivery in the warehouse is not to be considered a delivery to the consignee, but to his assigns, and the assigns become liable for the freight. (4 Denio, 110). In case of goods consigned to order, who is to pay the freight unless it be the person taking the goods from the bonded warehouse under the bill of lading ? The only way to ascertain who the " order " is, in such a case, is by inquiring at the bonded warehouse who took the goods out.

IV. Admitting, for the sake of argument, that the lien on the goods is waived by sending them to the bonded warehouse, the loss of the lien will not estop the ship owner from claiming the freight from the party liable for the same. (4 Denio, 110.)

V. Claiming the freight from Caffe and Cutter, even after the assignment, without knowledge of the endorsement of the bill of lading to the appellant, does not estop the respondents from claiming the freight afterwards from the endorsee. (Story on Agency, p. 367, note.)

VI. The case of *Merian* v. *Funk* covers fully all the points in this case, and the law as stated there settles the point that the endorsee of a bill of lading is liable to the ship owner for the freight on goods taken out of the United States bonded warehouse by himself under a bill of lading so endorsed, even though before the endorsement of the bill of lading the goods are received into the public store under a general order to discharge the ship.

By the Court. Ingraham, First J.—The plaintiffs claim freight upon goods brought in one of their vessels, consigned to Caffe & Cutter, to be delivered to them or their assigns. On the arrival of the vessel, the goods were sent to a bonded warehouse ; and afterwards, the consignees made an assignment to the defendant, and also assigned to him the bill of lading, upon which he received the goods from the public store on payment of the duties. This action is brought for the freight.

We long since held that the assignee who receives the goods on a bill of lading, and not the consignee, is liable for the freight. (*Burton* v. *Strachan* and *Scott*, New York Common Pleas, July 1846.) (*a*) And this is now well settled to be the law. (*Merian* v. *Funk*, 4 Denio, 110.)

(*a*) NOTE BY REPORTER.—The case of *Burton* v. *Strachan*, like *Merian* v. *Funk*, was an action for freight, brought against the consignees named in the bill of lading, who had endorsed the same to a third party before the actual delivery of the goods, but after they had been deposited in the public warehouse, under a general order to discharge the ship. The former case was tried in this court, before INGRAHAM, FIRST J., who nonsuited the plaintiff, and the nonsuit was sustained at a general term, in July, 1846. In *Merian* v. *Funk*, the Superior Court rendered a judgment in favor of the plaintiff, which was reversed, on error to the Supreme Court, in January, 1847. (4 Denio, 110.)

The opinion filed in *Burton* v. *Strachan* has been obtained from the records, and seems of sufficient interest and importance to justify its publication.

It is as follows :

*George Buckham*, for the plaintiff.

*Francis F. Marbury*, for the defendants.

BY THE COURT. ULSHOEFFER, FIRST J.—The question in this case is, to whom may the ship owners look for freight ? The defendants were the consignees (according to the bill of lading) of the goods for which freight is claimed—but they had endorsed the bill over to one Hill, for whom the goods were intended, before the arrival of the vessel. Hill sent for and obtained the goods, upon producing the endorsed bill of lading. After delivery, the plaintiffs sent a bill of freight to the defendants, who declined paying, and referred the plaintiffs to Hill. The defendants acted for the consignors, but without compensation, and had no interest in the transaction. The consignors, no doubt, are liable for freight. (17 Johns. 237.)

On examining the cases cited by counsel on this argument, I think that it is clear that the ship owners must look to the assignee of the bill of lading, to whom the goods were delivered. (13 East, 569–70; 4 Adol. and Ellis, N. S. 295.) The contract was to deliver to the defendants or their assigns, the defendants or their assigns paying freight. The ship owners can only look to the holder of the bill of lading, to whom it was assigned by the consignee, and to whom the goods were in fact delivered. The law appears to be too well settled to be matter of doubt. But the plaintiffs insist that as they did not know of Hill being the assignee, they are presumed to have delivered the goods to the defendants, or on their account. The plaintiffs were not bound to deliver the goods to any one unless upon payment of freight. But if they did deliver upon an endorsed bill of lading, they delivered to the assignee who received the goods, and not to the assignor. But the consignee or assignor gave no notice of such assignment, nor was any notice requisite beyond

The New York and Havre Steam Navigation Company *v.* Young.

The only point of difference in this case is, that the assignment was made after the goods were sent to the public store. If the delivery at the public store was to be considered a delivery to the consignee, there might be some reason for holding the consignee liable. But such delivery is not for the benefit of the consignee, but in pursuance of law, which directs a gene-

what was given by the actual endorsement of the bill of lading. The receipt for the goods was given by the servants of Mr. Hill, and in his name ; and if the ship owners (when an endorsed bill of lading is presented, and the goods demanded) do not inquire who the assignee or holder of the bill is, and deliver the goods without inquiry, they cannot look to the consignee, but can only look to him to whom they delivered the goods. A blank endorsement of a bill of lading transfers the property, and the holder is the assignee. The ship owners may, in such cases, refuse to deliver the goods to assignees unless the freight is paid, if they are doubtful as to their responsibility ; or they may refuse to deliver to any one who does not pay the freight down. If the goods are delivered, the ship owners can only look to the consignee or his assigns, to whom the delivery was made. As in this case the delivery was not made to the defendants, they are not liable to pay the freight. But if the plaintiffs could consider the defendants to be the apparent or presumptive consignees liable for the freight, the evidence in this case shows clearly that the defendants were not the consignees in fact, and that they endorsed the bill of lading to the proper consignee, or party in interest, before the arrival of the vessel. It is also manifest that the goods were received by Mr. Hill, and not by the defendants, and that if the plaintiffs did not know Hill, it was because they did not inquire as to the person to whom they blindly delivered the goods. The defendants were not bound to pay freight unless they received the goods, or assumed the ownership upon the arrival of the vessel. The proof is clear that before the vessel's arrival the defendants endorsed over to Hill the bill of lading, and that the defendants had no interest or concern in the matter afterwards.

It seems to me that there was no sufficient testimony in this case to require it to be sent to the jury upon questions of fact. Upon the testimony, I think the judge properly held that the defendants were not liable, and that such was the legal conclusion arising from the evidence. As matter of law, it appears to me that the defendants are not liable for this freight, and that whatever doubts or intimations may be found in some cases to the contrary, the clear weight of the authorities is, that the consignees are not liable by the mere act of endorsing over the bill of lading to another person. On the contrary, it seems clear to my mind that the act of endorsing the bill of lading is, within the terms and according to the legal effect of the bill, an assignment thereof, and that the assignees who receive the goods are alone liable to pay the bill for the freight.

Judgment of nonsuit affirmed.

ral order for that purpose. A compliance with that order does not deprive the plaintiffs of their right to claim the freight from the person who receives the goods on the bill of lading. (13 East, 569; 4 Adolph. and Ellis, 295.) That is the only evidence of delivery, and the receipt of the goods by an assignee of the bill of lading, renders him liable for the freight as the party who receives the goods. There never was a delivery of the goods until the party having the bill of lading claimed them. That person was the defendant. He claimed the goods as assignee of the bill, and received them. I see no ground for relieving him from liability for freight.

In the case in 4 Denio, 110, one parcel had been sent to the public store long before the assignment, and yet the court held the consignees not liable. The reverse of the proposition follows. If the consignees are not liable, the assignee is.

Judgment affirmed.