CIRCUIT COURT FOR MULTNOMAH COUNTY, JUNE TERM, 1871.

## THOMAS ATKINSON *v.* PATRICK MORRISSY.

ESTOPPEL.—Where A., who was mortgagee, having a right to redeem, took from B., who was assignee of a mortgagee in possession, a lease from month to month of the mortgaged premises, A agreeing to pay a monthly rent, "and to quit and give up possession of said premises upon demand at the end of any month;" *Held*, that he was not estopped to set up his right to redeem; and that it is not a necessary inference from the transaction that the parties intended to convert B's claim into a legal title.

REDEMPTION.—In general a mortgagor cannot claim redemption without a tender of the debt. But a distinction is made in cases where the debt or duty is wholly uncertain, and cannot be ascertained but by the judgment of the court.

EQUITY JURISDICTION.—Where the principal object of a suit is to determine a controverted question as to whether an equity of redemption exists, the controversy is sufficient to afford ground of equity jurisdiction.

TENDER.—Where the defendant refused to accept money from the plaintiff, and placed his refusal on the ground that the plaintiff had no right to redeem, the bill was sustained although the plaintiff had neither made a formal tender, nor brought money into court.

IMPROVEMENTS.—Where the mortgagee in possession had placed valuable improvements on the land, the plaintiff consenting that it should be done at his expense, the cost of the improvement was added to the amount otherwise due to the mortgagee.

THE plaintiff seeks to redeem certain premises. The defendant denies the plaintiff's right to redeem, and claims to be owner in fee.

The plaintiff being owner of lots 3, 4, 5, 6 and 7 in block 2, in Frushes' addition to East Portland, mortgaged them to one Thomas Cully, in March, 1869, to secure $800 and interest.

On the sixth of May, 1869, the plaintiff conveyed lots 3, 4, 5 and 6 of the block to one P. J. Martin by a deed absolute on its face, to secure $400 and interest, then owing from the plaintiff to Martin.

On the thirtieth of June, 1869, the plaintiff and the defendant entered into a written agreement; the plaintiff agreeing to convey to the defendant lots 5 and 6 in that block, on or before the fifteenth of August, 1869, for $500 to be paid by or before that time. The plaintiff agreeing that by or before that time he would remove incumbrances from lots 5 and 6. The defendant advanced $300 to the plaintiff and took a mortgage on lots 3 and 4 for its repayment, but stipulated in the agreement that if the plaintiff complied with the terms of the agreement, the $300 should apply in payment as part of the purchase price of lots 5 and 6.

The plaintiff paid a portion of the $400, principal, and the interest owing to Martin, and reduced the amount to $375.50.

On the 17th of August, the defendant being notified by Martin, of Martin's relations with the plaintiff, paid Martin the $375.50, and Martin executed to the defendant a deed for lots 3, 4, 5 and 6.

On the 10th of January, 1870, the plaintiff and the defendant signed an instrument, reciting the defendant's purchase, under the deed to Martin, in which instrument the plaintiff agreed to pay the defendant, "for the use and occupation of the premises the rent of twenty dollars a month * * and to quit and give up possession of the said premises upon demand from said Morrissy, at the end of any month."

Before the commencement of this suit, the plaintiff surrendered the possession of the premises to the defendant.

The plaintiff paid a portion of the mortgage executed to Cully, and on the 14th of January, 1870, the defendant paid the balance due thereon, amounting to $675.80, and took an assignment from Cully to himself; and he also paid certain mechanics' liens, the taxes on the premises, and made improvements.

He alleges that he is owner in fee; that he has paid upon

said premises money to the amount of $1,760.00; made repairs to the value of $686.28; and done work to the value of $100.00, amounting in all to $2,546.28.

The case was submitted for final decree on the pleadings and proofs.

*Strong & Trimble,* for the plaintiff.

*Mitchell & Dolph,* for the defendant.

UPTON, J. The answer, as originally filed, claimed the absolute title in fee, to lots 3, 4, 5 and 6, by virtue of the deed from the plaintiff to Martin, and from Martin to the defendant. And also claimed lots 5 and 6 by virtue of a purchase under the agreement of date, June 30th, 1869.

To that portion of the answer setting up the latter claim, the plaintiff objected on the grounds:

1st. That it is inconsistent for the defendant to claim an equitable title, and ask a specific performance of an agreement to sell, at the same time that he asserts that he holds the legal title.

2nd. That the allegations of the answer do not show that the defendant had paid the remaining $200, or show any offer to perform.

3d. That the answer disclosed that the defendant had abandoned that contract without offering to comply with it.

The part of the answer last mentioned was struck out, but the defendant still claims that he is entitled to lots 5 and 6 under the evidence.

Neither the evidence nor the allegations of the answer justify the defendant's claim under the agreement.

It is true, that the plaintiff did not remove the incumbrances prior to the 15th of August, but the covenants were mutual, and the conveyance of the plaintiff to the defendant and the payment of the $200, and removing the incumbrances from lots 5 and 6, were to be simultaneously performed. There is no claim that the defendant offered to make the payment. The circumstance that two days after the payment become due, he contracted with Martin, does not tend to show a compliance with that agreement; but it

shows conclusively that he intended, either to assume Martin's position as mortgagee, or to become owner of the legal title to the four lots, without respect to that agreement.

It is clear that the defendant, not having complied or offered to comply with the agreement, can claim nothing under it. And I think this disposes of this branch of the defendant's case.

It is not claimed but that parol evidence may be received to show that a deed, which is in its form absolute, was intended as a mortgage; and the proof is clear that the conveyance of lots 3, 4, 5 and 6 from the plaintiff to Martin was given to secure the payment of money. But it is claimed that the defendant purchased from Martin without notice of the plaintiff's right to redeem. And it is said that the purchase was made with the knowledge and consent of the plaintiff, and with the intention on the part of both parties to vest the absolute title in the defendant, and that the lease was intended as an acknowledgment of such change of ownership.

There are some conflicting statements as to what was communicated by Martin to the defendant, before the defendant paid Martin's demand and obtained the conveyance; but from what the defendant himself testified, it seems to me unquestionable, that he put upon inquiry, concerning the defeasance. He shows that he knew that Martin claimed money, and how much money. That Martin held the land in order to obtain the money that was due to him, and would not sell it without the plaintiff's consent. Although the defendant flatly denies some part of Martin's statements; yet his evidence, as a whole, tends to corroborate Martin.

Martin says, "I told the defendant at that time, the exact amount that Atkinson was owing me, and that upon the payment of that, I would surrender my claim upon the land to anybody Atkinson desired to *give or sell* it to." "He asked me as to the title and I told all I knew about it."

Some stress is laid upon the circumstance that the plaintiff consented to the conveyance from Martin to the defendant; but that argument is deprived of all force,

when it is shown that the defendant knew the facts. With that knowledge he could acquire no higher right than Martin held, and it would have required a deed from the plaintiff, or a foreclosure, to pass the legal title to the defendant.

It is not a necessary inference from the transaction of making the lease, that the parties intended to convert the defendant's equitable claim into a legal title, and the evidence abundantly shows a belief and an intention, at and after that time, on the part of both parties, that the plaintiff had and should have the right to redeem. The effect of the lease was to place the plaintiff in a position that he would be compelled to surrender the possession of the premises to the defendant before he could maintain this suit. He has surrendered possession, and that effect of the lease is at an end.

What it is claimed the lease effected, might have been effected by a deed of quitclaim; the parties were acting under advice of counsel, and undoubtedly would have executed some sufficient instrument, if it had been their intention to destroy the equity of redemption.

A point urged in behalf of the defendant, more strenuously perhaps than any other, is, that the plaintiff has neither tendered the money necessary to redeem, nor brought it into Court.

"In general, the proposition may be laid down that a mortgagor cannot claim redemption without a tender of the debt." (2 Hilliard on Mort. 86.) In *Gordon* v. *Hobart*, cited by Mr. Hilliard, Judge Story notices a distinction between "cases where a particular and certain debt or duty is *admitted* to be due and unperformed," and "cases where the debt or duty is wholly uncertain and indeterminate, and cannot be ascertained but by the judgment of the court."

The inference is, that in the latter case the jurisdiction may be founded on the necessity of ascertaining the amount of the debt, or the nature and extent of the duty; and that when the right to redeem is wholly denied, a tender is not an indispensable fact to be alleged. There is a manifest reason and necessity for the distinction between cases where the right to redeem is unquestionable, and cases where the prin-

cipal object of the suit is to determine a controverted question as to whether an equity of redemption exists. Such a controversy is sufficient to afford grounds of equity jurisdiction; and the court having acquired jurisdiction for one purpose, should retain it for other purposes when necessarily a part of the same subject matter.

The pleadings present a direct issue on the question whether the plaintiff is entitled to redeem on any terms.

And the evidence shows that the defendant, before the commencement of the suit, signified to the plaintiff his intention to hold the premises unconditionally; and not to permit a redemption on any terms. He declared to the plaintiff that no money was due from him, and refused to accept money from the plaintiff; placing his refusal on the ground that the equity of redemption had no existence. This rendered a tender unnecessary. (*Everett* v. *Saltus*, 15 Wend. 474; *Vanpell* v. *Woodward*, 2 Sandf. Ch. 143.)

The weight of evidence tends to show that the improvements were made at the plaintiff's charge with his consent; and although the consent may have been reluctantly given, inasmuch as the plaintiff is to have the benefit of them in case he redeems, equity requires that their cost should be added to the amount otherwise due to the defendant. A decree should be entered allowing the plaintiff to redeem upon payment of two thousand two hundred and thirty-five $\frac{43}{100}$ dollars, and the costs of this suit.