Potter, J.
 

 Tbe evidence, as allowed, states that tbe plaintiffs’ vessel in July, 1877, was loaded by a coal companu-, consignors, at Perth Amboy, New Jersey, with coal for Tucker, Swan
 
 &
 
 Co., Providence, Rhode Island. Tbe vessel not being properly trimmed, it appears to have been done by tbe consignors at an expense of $17.04, which tbe captain refused to pay to tbe consignors, and sailed without signing any bill of lading.
 

 Although there are many items of evidence to imply that tbe coal was ordered by tbe consignees, and that therefore, so far as tbe cargo was concerned, the consignors were agents of tbe consignees, yet there is no positive evidence of it, and it is easily to be seen that this might seriously affect tbe decision.
 

 There is here no dispute about tbe bill of lading or amount of freight.
 

 Tbe consignors it seems trimmed tbe vessel and claimed to bold tbe bill, $17.04, against tbe vessel, and because they did, tbe captain declined signing any bill of lading.
 

 On arrival, tbe consignees paid tbe freight, bolding back $30,
 
 *507
 
 as they claimed, to cover expenses. They have subsequently paid to the consignors the bill for trimming, $17.04, and have tendered and still tender to the master the remainder of the $30.
 

 The two questions presented are : First, the consignee’s liability for freight. Second, if they were liable, had they any right to deduct the charge for trimming the load.
 

 It may perhaps be best first to consider the consignee’s liability if the master had signed a bill of lading, and then to consider how the liability is affected by the want of a regular bill of lading signed by him.
 

 On reading the cases, it is evident that some confusion arose at first from the supposed difficulty of holding that both consignor and consignee could be liable at the same time. But it is now settled that the consignor still continues liable even after the consignee becomes so. Maule
 
 &
 
 Pollock on Shipping, 253 ;
 
 Shepard
 
 v.
 
 De
 
 Bernales, 13 East, 565 ; 3 Kent Comment. *222 ;
 
 Wooster et al.
 
 v. Tarr, 8 Allen, 270.
 

 As to whether acceptance under a bill of lading, “ he and they paying freight,” makes the consignee liable for freight, there are two classes of cases.
 

 Of the one class, a leading case is
 
 Sanders
 
 v. Vanzeller, 4 Q. B. 259, also in 2 Gale & Dav. 244, which holds that while the law will not imply a contract from acceptance, still the circumstances of the acceptance may go to the jury in evidence of a new contract. So
 
 Young
 
 v. Moeller, 5 El. & B. 755, 760, and other cases cited in 3 Kent Comment. *222,
 
 sq.
 
 Maclachlan on Shipping, p. 466, takes this view.
 

 The other class of cases is represented by
 
 Cock
 
 v. Taylor, 13 East, 399, A. D. 1811, which holds not merely that the acceptance should be submitted to the jury as evidence from which they might infer, &c., but that the acceptance of the goods is evidence of a new agreement. “ His receiving them from the master and the master’s parting with his lien and giving them up to the purchaser at his request, is evidence of a new contract, &c.” “ The indorsees of the bill of lading knew that they had no right to take the goods from the master without payment of freight.”
 

 Dougal
 
 v.
 
 Kemble,
 
 3 Bing. 383, also, in 11 Moore, 250, “ whoever obtains the delivery of the goods under such a bill of lading contracts by implication to pay the freight due on them. There
 
 *508
 
 is no assignment of contract, no shifting of liability. The receiver of the goods is an original contractor to pay the freight of them.” Per Best, C. J., 3 Bing. 389.
 
 Merian
 
 v.
 
 Funck,
 
 4 Denio, 110. It is well settled that acceptance is enough. So in
 
 Denison
 
 v.
 
 City Bank,
 
 57 N. Y. 81;
 
 Jesson
 
 v.
 
 Solly,
 
 4 Taunt. 52.
 

 Bell
 
 v.
 
 Kymer,
 
 1 Marsh. 146. Gibbs, C. J., “ a man most eminent for his knowledge of commercial.law,” holds that “ the holders of a bill of lading were bound to know they were liable for freight,” cited and approved by Best, C. J., in
 
 Dougal
 
 v.
 
 Kimble,
 
 3 Bing. 383, 390, 391.
 

 Pelayo
 
 v.
 
 Fox,
 
 9 Pa. St. 489. Delivery of bill of lading to indorsee who had bought after shipment, makes him liable for freight.
 

 Blanchard
 
 v.
 
 Page,
 
 8 Gray, 281, 291. Shaw, C. J. If a consignee holding a bill of lading requiring a delivery conditioned on payment of freight, presents it and receives the goods without paying freight at the moment of delivery, such acceptance under such a claim is evidence of a promise on the part of the consignee to pay the freight, on which, if not rebutted, an action will lie. And the majority of the text-writers seem to take this view, that if the acceptance is proved, the law implies the new contract.
 

 Bateman Commercial Law, § 801. The consignee having received the goods without pay, the law gives the right to demand it at the place of destination. Citing Jeremy on Carriers, § 84; Story on Bailments, § 586.
 

 Story on Bailments, § 589. When the bill of lading provides for delivery, the consignee or his assignees paying freight, the acceptance of the goods binds the consignee by implication. Citing
 
 Dougal
 
 v.
 
 Kemble,
 
 3 Bing. 383.
 

 Kent, Comment., vol. 3, *222, says that if the master delivers without payment he may sue the consignee on an implied contract, the delivery without payment being the consideration. This is in the chancellor’s text, citing
 
 Cock
 
 v.
 
 Taylor,
 
 13 East, 399, and
 
 Brouncker
 
 v.
 
 Scott,
 
 4 Taunt. 1. A note says, that but for the case of
 
 Sanders
 
 v.
 
 Vanzeller,
 
 4 Q. B. 259, he should have considered the law would imply the contract.
 

 So 1 Parsons on Shipping, 209. If the master delivers goods with notice that he shall look to the consignee and the consignee accepts, he becomes liable.
 

 
 *509
 
 And Abbott on Shipping, *422, after stating that the persons accepting the goods under the ordinary bill of lading are liable, says, “ and this opinion seems consonant to sound reason; for if a person accepts anything which he knows to be subject to a duty or charge, it is rational to conclude that he means to take the duty or charge on himself, and the law may very well imply a promise,” &c.
 

 “ The delivery of the goods to the consignees and their acceptance of them under the bill of lading, raised an
 
 assumpsit
 
 against them to pay freight according to the stipulation in the bill of lading.” Judge Betts, in
 
 Shaw
 
 v. Thomson, Olcott, 144, 149.
 

 The weight of authority, therefore, seems to be that where there is a bill of lading, and the acceptance by the consignee is proved and unexplained, the law will imply a promise to pay freight.
 

 Next, how would the case stand without any regular bill of lading. In the present case, the bills were made out, but not signed by the master, and one of these unsigned bills was sent to the consignee and received by him.
 

 In
 
 The
 
 Peytona, 2 Curt. 21, 26, 27, the captain had refused to sign the bill of lading. Judge Curtis held that it was not essential to a legal consignment which might be merely verbal, and this is quoted and approved by Shipman, J., in
 
 Fox
 
 v. Holt, 36 Conn. 558, 560.
 

 In
 
 The Water Witch,
 
 1 Black, 494, the master refused to sign the bill, but received the cargo and carried it to the consignees and libelled it for freight. In this case the shipper forwarded the unsigned bills to the consignee. The right to freight was not disputed, but damages were claimed exceeding the freight.
 

 The clause by which the owner binds the ship and the shipper the cargo, each to the other, is borrowed from, and a part of, the general mercantile law. So many provisions in charter-parties or bills of lading merely express what.the law would imply without them. Judge Story, in
 
 The Schooner Volunteer and Cargo,
 
 1 Sumner, 571; Abbott, on Shipping, *160.
 

 Maule & Pollock on Shipping, 258. The lien for freight exists without any express stipulation. It exists independent of contract, for freight due.
 

 The books contain very few cases where a cargo is sent with
 
 *510
 
 out a bill of lading; but the foregoing quotations are sufficient, we think, to show that in these cases mercantile usage agrees with the principles of the common law as applied to other contracts.
 

 The coal was sent to the consignees. They received it and directed the master to deliver it to Smith, which he did. There is no complaint of want of examination, or that the cargo was damaged, or was not what they expected. One of the unsigned bills was received by the defendants. The defendants made no objection to the freight, but paid it all except $30, which they kept back and claimed a right to deduct.
 

 These facts stated in the reported evidence would seem sufficient to establish their liability for freight before any jury.
 

 Further, the presumption of law is said to be, in the absence of any evidence on the subject, that the consignee is the owner. Baron Parke, in
 
 Coleman
 
 v. Lambert, 5 M. & W. 502;
 
 Krulder
 
 v.
 
 Ellison,
 
 47 N. Y. 36 ; citing
 
 Price
 
 v. Powell, 3 N. Y. 322 ;
 
 Everett
 
 v.
 
 Saltus,
 
 15 Wend. 474.
 

 The defendants’ first point in the present case is, that the contract being between the consignor and carrier, the consignor is
 
 alone
 
 liable for freight. And they cite three cases,
 
 Blanchard
 
 v.
 
 Page,
 
 8 Gray, 281, 290, 291;
 
 Wooster et al.
 
 v.
 
 Tarr,
 
 8 Allen, 270 ;
 
 Gage
 
 v.
 
 Morse,
 
 12 Allen, 410.
 

 Blanchard
 
 v.
 
 Page
 
 was not a suit for freight, but was brought by the shipper of the cargo against the owners of the vessel to recover for damage done to the goods. The only question in the case was, whether the shipper, who was a mere agent, could sue, it being admitted that the owners, though not named in the bill, could. It was not necessary to make any decision as to the rights of a consignee to sue unless owner; but 8 Gray, 291, the court says, though it is not necessary to the decision, what we have quoted before, that the acceptance of the goods by the consignee under certain circumstances would render him liable for freight.
 

 Gage
 
 v.
 
 Morse,
 
 12 Allen, 410, was a case of demurrage, and therefore not like the present. Freight and demurrage are different things and the liability depends on different grounds.
 

 Wooster et al.
 
 v.
 
 Tarr,
 
 8 Allen, 270, decides that the shipper named in a bill of lading is liable to the carrier for the freight, although he does not own the goods, and the carrier has waived
 
 *511
 
 bis lien thereon. Tbe case did not involve the question of tbe liability of tbe consignee, nor do any of the remarks of Bigelow, C. J., affect tbe present case.
 

 The defendants’ second point is, that tbe liability to freight does not pass with tbe goods, and they cite
 
 Sanders
 
 v.
 
 Vanzeller,
 
 4 Q. B. 259. All which that case decides is, that while the jury might infer a contract to pay freight from the defendants taking the goods, the court could not infer one as a matter of law.
 

 If the consignee in the present case was liable for the freight, had he any right to keep back $17.04 ?
 

 . The consignor, the coal company, loaded the vessel. The plaintiffs found the load was not properly trimmed by tbe men employed by the consignor and that they had not a full load. The consignor claimed to hold the trimmers’ bill against the vessel, which the master refused to allow. But the defendants, notwithstanding, paid this bill to the consignor.
 

 The $17.04 was a matter disputed between the master and the consignors; he had no contract with any but the consignors,
 
 Wooster et al.
 
 v. Tarr, 8 Allen, 270, until a new contract arose by implication with the consignees, and we cannot see that the consignees had any right to deduct it from the freight any more than any debt the captain might owe .to any other person.
 

 Ordinarily, the captain and men are to load the vessel, usage and special contract excepted. The captain is to superintend the trimming of his vessel.
 

 And, as we have said, the contract as to receiving and loading the coal was between the master and consignors only. If the consignors agreed to load the vessel and it was not properly trimmed, it was the consignors’ fault, and they had no claim for it on the captain, whose only duty would be to superintend it. But if the master was to load, it was still a dispute between the master and consignors, and the consignees had no right to withhold it from the master.
 

 The judge having instructed the jury that as the bill of lading was not signed, the master had no claim on the consignees for freight, but must look to the consignors, a verdict under his direction was taken for the defendant.
 

 From the views before expressed it results that a new trial must be granted.
 
 Exceptions sustained.