The cotton in question was purchased in Texas. The original bill of lading, given at Shreveport, La., Feb. 12, 1880, acknowledges the receipt of it in good condition, c., to be delivered in Providence, R.I., on paying a certain stipulated rate of freight; "rates guaranteed to Providence, R.I." The word Providence was on the bales. The *Page 579 
owner's name was not on them, but the cotton was described by other marks.
The cotton seems to have arrived safely at New York, and thence, instead of being forwarded to Providence by a more direct route, was sent to Chicopee, Mass. The mistake seems to have been made in the office of the company in New York, which forwarded it, although there is no very positive evidence as to this. The copy of the bill of lading which was sent from New York with the goods, contained the words, Chicopee, Mass., where the original had the words, Providence, R.I. Both original and copy contain the words, "Notify B.F. Vaughan, Providence, R.I.
The cotton arriving at Chicopee, the officers of the Chicopee Railroad notify Mr. Vaughan, the owner or consignee, by letter of March 6, 1880, directed to Providence; and he replies by letter, dated Providence, March 8th, saying, "You will oblige by forwarding the 51 bales, and any more of this mark that may arrive, billed to me."
The freight to Chicopee was $284.62. The guaranteed rates would have amounted to about that sum; and if the cotton had not been missent, that sum would have about covered the freight to Providence. This sum the Providence and Worcester Railroad Company paid to the Chicopee Railroad Company, and the plaintiff paid to the Providence and Worcester Railroad Company; but the Providence and Worcester Railroad Company demanding $65.91 for their own charges and holding the cotton for it, the plaintiff replevied the cotton.
There is no dispute but that the charges from New York to Chicopee, and from Chicopee to Providence, were reasonable, if those roads had a right to make any charge at all.
The goods having by somebody's blunder been missent from New York to Chicopee, was the owner liable for the freight between those two places, and could he have obtained the goods without paying it?
If one person takes another's goods from his possession tortiously, or without his consent express or implied, and sends them by a carrier, it is well settled that the carrier must look to the one who employed him, and has no legal claim or lien for freight as against the owner. In cases of doubt, the carrier must protect himself by requiring payment in advance. *Page 580 
But it seems to be the rule of common sense, and supported by the weight of authority, that when the owner has, by his own voluntary acts, clothed the sender with an apparent authority to act for him, then the carrier has a right to look to the owner for his reasonable charges, and to hold a lien on the goods for the charges, and in judging of the authority we should apply the same principles of evidence that are applied to cases of agency generally. See Lawson on Contracts of Carriers, § 224; YorkCompany v. Central Railroad, 3 Wall. 107; Schneider v.Evans, 25 Wis. 241, 265; Mallory v. Burritt, 1 E.D. Smith, 234.
In the present case the owner, by his agents at Shreveport, had placed the cotton in charge of a carrier to be carried by a certain route, and to be forwarded by the usual lines of carriers. He had by this made them successively his agents for forwarding. By a mistake of one of them, in copying the bill of lading to send forward with the cotton, the word Chicopee was inserted as the place of destination when it should have been Providence. Who is to suffer for the mistake of the plaintiff's agent? Certainly, not the Chicopee Railroad Company, who have not been in fault; nor the Providence and Worcester Railroad Company, who only paid to the Chicopee road the lawful charges.
Upon any other rule no railroad or steamboat line would be safe in taking goods from a truckman, even from one ordinarily employed by the owner, and the carrier could only protect himself by requiring payment in advance. And payment in advance to the first carrier for his own line would protect only that first carrier; and succeeding carriers would be obliged to take the same precaution.
There are, perhaps, some cases not easily reconcilable with any sound general rule, and where peculiar circumstances, not always reported, may have influenced the decision. The cases ofEverett v. Saltus, 15 Wend. 474; also Saltus v. Everett,
20 Wend. 267, were cases of fraud in the owner's agent. And as to the distinction between the owner's liability for the fraud and his liability for the negligence of his agent, see Wharton on Agency, § 540 and § 476. See, also, Caldwell v. Bartlett, 3 Duer, 341.
If the Chicopee Railroad Company had been in fault, so that they would not have been entitled to freight from New York, the *Page 581 
owner might have refused to pay it, and might have replevied and tried the question of their right to it at Chicopee. But if, as seems to us, that company was not in fault, having taken the goods from a person or company clothed by the owner with possession and apparent authority, they were not obliged to give them up at Chicopee, except upon the payment of their lawful charges and advances.
If the first carrier has guaranteed a through rate, as he has done in this case, the owner may have his action against him in Shreveport; or he may have an action against the company whose clerk committed the blunder; or he might have replevied the cotton at Chicopee, and had the question decided in Massachusetts.
In this case the first carrier guaranteed the delivery of the cotton at Providence at a certain rate, and, as we have said, but for the mistake it would have been delivered there at about that rate. And it is very ingeniously argued, by the counsel for the plaintiff, that all the carriers subsequent to the first took the goods with full notice of this guaranty, and are, therefore, bound by it. But it is difficult to see how any road not connected with the first is bound by such a guaranty, even if knowing it.
It is further argued that as the Providence and Worcester Railroad Company took the cotton with knowledge of the guaranty, and with knowledge that the cotton had gone out of its usual course, it should be estopped from denying a connecting arrangement for through transportation.
We cannot see that the Chicopee Railroad Company was bound to know that the cotton was on the wrong route. The bags were indeed marked Providence, and B.F. Vaughan, of Providence, was to be notified. But they were to be controlled by the bill of lading, and by that the destination was Chicopee; and it would not have been unreasonable for them to suppose that the owner in Providence might have ordered the cotton to Chicopee for some purpose of his own. We cannot see that there was anything in this to excite suspicion or put them on their guard.
The cotton arrives at Chicopee, the place of its destination by the bill of lading which accompanied it. The owner is informed of it, as directed by the bill of lading. No person but the owner *Page 582 
had any authority to send it further. But for the owner's direction the Chicopee Railroad Company must have held it. They knew of no other destination. They had notice by the bill of lading that the owner had given no authority to send it to any other place. If, so warned, they had forwarded it, and the owner had been damaged by it, e.g. if he had intended to sell the cotton at Chicopee, or to send it to some other place, they might have been liable for the damages.
They did as directed by the bill of lading, notified the owner and awaited his orders.
Judgment for defendant.