By the Court.
Sedgwick, Ch. J.
The action is against the makers and indorser of several promissory notes. It is necessary to consider the facts that concern only one of the notes. All of them are in like case. The indorser was an corporation called “The .German American Mutual Warehousing & Security Company.” The referee ordered judgment against the company, and it appeals.
At the time of the occurrence under examination, Robert Squires was the president of the Warehouse Com *370 pany. Its charter (ch. 701, Laws 1872), empowered it to receive upon storage or deposit, all kinds of personal property, and to make advances upon such property, upon such terms “as maybe established by the directors of said company,” and for such rates of commission, as shall be agreed upon by and between “the parties to the respective transactions, or otherwise as may be determined and established'by said board of directors.”
By the by-laws, the president “had the general direction, superintendence and supervision of the affairs, and of the officers of the company.”
Another by-law was, “It shall be his duty to sign all bonds, deeds, checks, drafts, debentures, contracts, or other instruments in writing entered into by or on-behalf of the company, when the executive committee so direct or approve, or authorize the same to be done .... And generally he shall perform all the acts incidental to the office of president, and all and any acts, which the majority of the board may request by vote at any meeting.” There were six directors, and four of them formed the executive committee. During all the time under inquiry, the referee found that the directors left to the president the entire keeping and management of its books and papers, and the entire management and conduct of its .affairsand the referee found particularly that the directors turned over the whole conduct and management of the affairs of said company to its president, without restriction, restraint or supervision.
The firm -of Squires, Tayler & Company, the president of the defendant not .being a partner of the firm, made a promissory note to their own order, payable at the National Park Bank at four months, for the payment of $12,000. This note contained the following words: “ having deposited with said bank as collateral security for the payment of this or any other liability, etc., the following property, viz : In the stores of the German American Mutual Warehousing & Security Company, 120 hogsheads of tobacco, the market value of which is *371 now $15,000, with power to sell on note not being paid.” This note, after indorsement by the maker, was indorsed by the president of the Warehouse Company as follows : “German American Mutual Warehousing & Security Company, Robert Squires, President.” The maker paid the president, as compensation for this indorsement, a commission of one per cent., which was placed by the president in the funds of the company.
The makers presented the note to the bank of the plaintiff for discount. The note was accompanied by a document, headed: “Rational Tobacco Inspection,
German American Warehouse, &c. Received for inspection 120 hogshead of tobacco, marked, &c., which on payment of charges will be delivered to bearer. Berry &, Bryan, Inspectors.”
The bank discounted the note. In this action the warehouse company denies its liability to respond to the indorsement, on the ground that the president had no authority from the company to make it, and that the indorsement was without consideration to the company, the plaintiff having presumptive or constructive notice of these things. It is not necessary to deny, that as the note was in the hands of the makers when it was discounted, the plaintiff took it subject to the risk that in fact the indorser had not authorized the indorsement to be negotiated, as it was in fact (Stall v. Catskill Bank, 15 Wend. 478 ; Fielden v. Lahens, 6 Abb. N. S. 347). The maker has no authority, because he is maker, to make representations for the indorser (Jackson v. Fassitt, 33 Barb. 645). It is another case, however, if the maker make representations upon which the note is discounted and which the indorser has authorized to be made. If the indorser authorize the maker to take the note after its indorsement, and to procure it to be discounted, and it is then discounted, the indorser is liable as if he had taken the note, had it discounted, and paid the amount he received over to the maker. '
In the present case, Mr. Robert Squire, assuming to *372 act for the company of which he was the president, made the indorsement of the company’s name, handed the note to the maker and authorized him to do and represent all the maker did and represented, when the discount was' made afterwards. The questions of the case, therefore, are the same as if the president in person had procured the discount, acting as agent of the cofnpany.
To hold the company it would, of course, be necessary to show, apart from any representation of the individual who was president, that the indorsement was that of the company ; that is, that it was made in a form authorized by the company itself or in a form that the conduct of the company justified the plaintiff in believing was authorized by the company. There can be no doubt, on the testimony, that the company had recognized in many instances of discounts by the plaintiff of paper made or indorsed by the company, that the president was a competent agent to sign its name, in the manner presented in this case. This at least estopped the company from taking, against a holder for value, the position that the president had not the power to sign the name of the company in indorsing the note.
The testimony shows that the company had given to its president general power to manage its business. Its business, according to its charter, was in part to advance upon merchandise consigned to it, or stored or on deposit with it. To the bank, the transaction appeared to be in such a business, especially from the form of the collateral security given with the note. That appeared to represent that the tobacco was stored in the warehouse of the defendant. It was an incidental power of the company jto borrow money for the purpose of making its advances. The negotiation of the indorsement was a representation rby the general agent that it was made in the course of the company’s business, and the company was bound by that, especially when the transaction had the appearance that has been specified, and would have been bound by it if *373 there had been, no such appearance if the contrary did not appear in the transaction.
It was argued that in the charter and by-laws of the company were certain restrictions of the power of the company, and of its president. The company, however, had a general power to incur indebtedness, and give evidences of that. In such case, it was held in Ellsworth v. St. L. A. & T. H. R. R. Co. (98 N. Y. 553), that a person dealing in its securities, may in the absence of notice to the contrary, assume that restrictions upon its power have not been violated.
It is not necessary to examine the facts upon an assumption that the company received no consideration for their indorsement. It was proved that the makers paid one per cent, for it. In truth, the transaction was the same in substance, as if the company had borrowed on the note indorsed by it the amount paid by the plaintiff, and then lent or handed the money to the makers, and taken for the plaintiff’s and its security, the tobacco represented by the warehouse certificate. The only way in which the company could have been injured was in a possible insufficiency in the security. It was proved in the case that at the maturity of the note, there was such an insufficiency, but there was no proof that at the making of the discount there was then an apparent insufficiency. If it were otherwise, this would not prevent the plaintiffs recovering upon the indorsement.
It is further argued, that the directors of the company did not know or have reason to think that its president was doing any business for the company of this kind. It is nevertheless the fact, that the. company received and has retained the consideration upon which the indorsement was made. It may be true that when the storehouses of the company were rented, the directors believed that the company ceased to do any business, excepting to receive the rentals of the stores. Of this, the plaintiffs had no notice, and of right they might rely upon the implied representation of the general agent of the com *374 pany, its president, that the company was doing its usual business.
It is further supposed that the plaintiff was infected with the knowledge of the president of the company, because he was a director of the plaintiff, On this point it is enough to say, that the company’s president took no part for the bank, in the discounting of any of the notes.
The testimony does not call for the reversal of any of the findings of fact made by the referee, and on those findings the judgment should be affirmed, with costs.
Freedman and Ingraham, JJ., concurred.